2002 WY 185

**Jorge T. SOTOLONGO–GARCIA,
Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. 02–28.

Supreme Court of Wyoming.

Dec. 31, 2002.

Mary B. Guthrie, Cheyenne, WY, Representing Appellant.

Hoke MacMillan, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Rebecca A. Lewis, Special Assistant Attorney General.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶ 1] Appellant Jorge T. Sotolongo–Garcia appeals his convictions for possession with intent to deliver marijuana and conspiracy to deliver marijuana. Appellant asserts the jury was presented with insufficient evidence to support the verdict on both charges. Satisfied with the evidence as reflected by the record, we affirm.

## ISSUE

[¶ 2] Was evidence sufficient to permit the jury to find appellant guilty of possession with intent to deliver marijuana and conspiracy to deliver marijuana?

## FACTS

[¶ 3] A traffic stop on I–80 in Laramie County revealed two occupants, one of which was appellant, and 77 pounds of marijuana. Appellant claims he was just along for the ride.

[¶ 4] Appellant's partner, Steven Nevling, was a car mechanic in San Diego, California who repaired cars for drugs or money. Pursuing his chosen career, he worked on a 1994 Mitsubishi Gallant for a man called "Alan." Nevling had known Alan for about three months. Nevling also knew Alan was in the drug business because Alan supplied Nevling with drugs. Nevling, however, had previously met appellant only one time through an introduction by Alan.

[¶ 5] While working on the Mitsubishi, Nevling was approached by Alan and asked if he would drive the car to Iowa in return for $1,500 and a quarter ounce of methamphetamine. Alan explained that his original driver could not, for whatever reason, make the trip. After agreeing, Nevling and Alan met three individuals who loaded the trunk with marijuana. Alan then instructed Nevling to follow him to the home where Nevling was first introduced to appellant. At the home, Nevling was informed that appellant would join him on the trip.

[¶ 6] At this juncture, appellant got into Alan's car, and Nevling was instructed to follow appellant and Alan. Nevling did so

until they passed through an immigration checkpoint, after which appellant joined Nevling in the Mitsubishi. Alan gave appellant $300 for expenses, along with a cell phone, and appellant and Nevling began their journey to Iowa.

[¶ 7] Nevling drove from San Diego to Las Vegas. Appellant then drove to Rock Springs, whereupon Nevling again took over. During the trip, the cell phone rang several times. Appellant would speak in Spanish to the caller, and a couple of times Nevling heard appellant use the word "mota," which is Spanish slang for marijuana.

[¶ 8] West of Rawlins, appellant became ill. Nevling called 911 and got directions to the hospital. Having delivered appellant to the hospital, being low on cash, and not knowing who to contact once he reached Iowa, Nevling used the cell phone to call Alan. He was told to stay with appellant. Later, again on the cell phone with Alan, Nevling was told to get the phone to appellant. He did so, and appellant spoke with Alan. Sometime after that, appellant left the hospital against medical advice, and they continued their journey.

[¶ 9] The twosome was stopped fifteen miles west of Cheyenne because the 1994 Mitsubishi lacked working taillights and Nevling was driving erratically. They both claimed not to know the other. The interior of the car exuded an overwhelming odor of diesel fuel, a ruse sometimes used to mask the scent of drugs from dogs. A canine unit was called to the scene and, after the dog alerted, officers found about twenty bricks of marijuana in the trunk. When questioned later, appellant admitted he knew there were drugs in the car but said they belonged to Nevling.

[¶ 10] The State entered into a plea agreement with Nevling, who, pursuant to that agreement, testified against appellant at trial.

### STANDARD OF REVIEW

[¶ 11] When addressing a claim that the evidence is insufficient to sustain the conviction for a crime, we apply the following standard:

This Court assesses whether all the evidence which was presented is adequate enough to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by a finder of fact when that evidence is viewed in the light most favorable to the State. We will not substitute our judgment for that of the jury when we are applying this rule; our only duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did.

This inquiry does not require a court to determine whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Rather, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This standard gives the trier of fact the responsibility to fairly resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts. "Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution."

*Willis v. State*, 2002 WY 79, ¶ 8, 46 P.3d 890, ¶ 8 (Wyo.2002) (citations omitted).

### DISCUSSION

#### *Possession with intent to deliver*

[¶ 12] Appellant's brief questions only the "possession" element and does not challenge the element of "intent to deliver." Possession is proved when the prosecution establishes that the accused either individually or *jointly with another* exercised dominion and control over the substance, had knowledge of its presence, and had knowledge that the substance was a controlled substance. *Wise v. State*, 654 P.2d 116, 119 (Wyo.1982). Direct evidence of actual possession of the substance is not required.

Constructive possession is sufficient and can be proved by circumstantial evidence linking together a series of facts which results in a reasonable inference that the defendant had the necessary control over and knowledge of the drugs. *Houghton v. State,* 6 P.3d 643, 647 (Wyo.2000); *Wise,* 654 P.2d at 119.

[¶ 13]   Clearly, the evidence, as recited in the facts, not only reaches the sufficiency threshold but borders on overwhelming. Appellant was a prior acquaintance of Alan; it was Alan who arranged for the marijuana to be transported; appellant shared in the driving chores; appellant remained in contact with Alan by cell phone throughout the journey; appellant was given the cash by Alan to pay for the expenses of the trip; appellant had the contact information once they reached their destination in Iowa; and appellant said he knew there were drugs in the car. This evidence not only supports the possession but the intent to deliver as well.

### Conspiracy to deliver marijuana

[¶ 14]   The elements of a conspiracy involving a controlled substance are: (1) at least a tacit understanding between the defendant and a coconspirator to commit an act violative of Wyoming's controlled substances act, and (2) intent by the defendant to commit the elements of the offense which was the object of the understanding. Due to the covert nature of the crime, circumstantial evidence may be relied upon to establish the conspiracy. *Gilliam v. State,* 890 P.2d 1104, 1108 (Wyo.1995). The amended information in this case alleges that appellant conspired with "Steven Nevling and others whose full identities are presently unknown to commit the crime of Delivery of Marijuana." "All

that is required is that 'a participant know of the others' existence and their activities to further the conspiracy.' " *Marquez v. State,* 12 P.3d 711, 716 (Wyo.2000) (citations omitted).

[¶ 15]   Once again, a review of the evidence presented clearly ties appellant to both Nevling and Alan in a conspiracy to deliver marijuana. Appellant's real argument is that Nevling was not credible because of his plea agreement with the State. However,

> [w]e have consistently held that even though it is possible to draw other inferences from the evidence presented, it is the responsibility of the jury to resolve conflicts in the evidence. The factfinder— in this case, a jury—did that. The jury is entitled to weigh and disregard the evidence intended to discredit the witnesses for the State.

*Willis,* ¶ 15 (quoting *Broom v. State,* 695 P.2d 640, 642 (Wyo.1985)).

### CONCLUSION

[¶ 16]   Appellant's trial counsel said it best in closing when he told the jury, "this case does come down to Mr. Nevling's testimony because if you believe him, then you can find Mr. Sotolongo guilty, but you have to believe him." Apparently the jury did.

[¶ 17]   Affirmed.