2006 WY 127

**Donald Shane HEMBREE,
Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. 05–158.

Supreme Court of Wyoming.

Oct. 11, 2006.

Representing Appellant: Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; Tina N. Kerin, Senior Assistant Appellate Counsel. Argument by Ms. Kerin.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Paul S. Rehurek, Deputy Attorney General. Argument by Mr. Rehurek.

Before VOIGT, C.J., and GOLDEN, HILL,* KITE, BURKE, JJ.

* Chief Justice at time of oral argument

GOLDEN, Justice.

[¶ 1] Appellant Donald Shane Hembree entered conditional guilty pleas to two counts of felony possession of a controlled substance with intent to deliver in violation of Wyo. Stat. Ann. § 35-7-1031(a)(i) (Lexis Nexis 2005). He reserved the right to appeal the district court's denial of his motion to suppress evidence seized during a search of his luggage following a traffic stop. In this appeal, Hembree claims that his prolonged detention during the traffic stop and the subsequent search of his luggage was constitutionally infirm under the Fourth Amendment to the United States Constitution. Finding that the detention and search were proper, we affirm.

## ISSUE

[¶ 2] The only issue presented for our review is:

Did the trial court err in denying Appellant's motion to suppress evidence?

## FACTS

[¶ 3] On May 28, 2004, Wyoming Highway Patrol Trooper Jason Green stopped a car driven by Hembree after observing the car traveling 85 miles per hour in a 75 miles per hour zone on Interstate 80 just outside of Sinclair, Wyoming. As Trooper Green approached the driver's door, he noticed that the California license plates on the car had expired. Trooper Green asked Hembree for his driver's license, registration and proof of insurance. Hembree produced a Louisiana driver's license that had expired in 2002 and stated the car was a rental. Both Hembree and his passenger, Hembree's sister Bretta Hembree, told Trooper Green that Ms. Hembree's boyfriend, Ronnie McDowell, had rented the car in California from Enterprise Rent-A-Car. However, neither Hembree nor his sister could produce a copy of the rental agreement.

[¶ 4] Trooper Green asked Hembree to accompany him back to his patrol car. Trooper Green then requested his dispatcher

to contact Enterprise to determine who was authorized to drive the car and the geographic area in which it was authorized to be operated. While waiting for a response on the status of the rental car, Trooper Green asked Hembree about his travel plans and how he acquired the rental car. He also occasionally returned to the rental car where Ms. Hembree was situated and asked her some of the same questions. Additionally, Trooper Green issued Hembree a citation for driving without a valid driver's license and warning citations for speeding and operating a vehicle with an expired registration, and returned the expired driver's license to Hembree. Approximately 45 minutes into the stop, dispatch informed Trooper Green that neither occupant of the rental car was authorized to drive it, the car was not authorized to be in Wyoming, and Enterprise wanted the car impounded.

[¶ 5] Trooper Green advised the Hembrees that they were not authorized to drive the car and it was going to be impounded pursuant to Enterprise's request. Trooper Green offered to drive them into town to the bus station or to a motel. Trooper Green also explained to Hembree that he was free to grab his bags and walk on down the road. Hembree and his sister opted to accept the trooper's offer for a ride to a nearby motel. Trooper Green advised them that before he loaded their luggage in his patrol car he needed to know if the bags contained any drugs or contraband. Hembree and his sister denied any illegal or harmful contents and both consented to Trooper Green searching their luggage. A search of Hembree's bags revealed a small plastic bag containing one ounce of cocaine and five small plastic bags containing approximately four and one-eighth ounces of methamphetamine.

[¶ 6] Hembree was arrested and subsequently charged with one count of possession of cocaine with intent to deliver, one count of possession of methamphetamine with intent to deliver, one count of conspiracy to deliver cocaine, and one count of conspiracy to deliver methamphetamine.[1] Hembree filed a mo-

tion to suppress the drug evidence. After a hearing the district court denied the motion. The district court found Hembree's continued detention was lawful and Hembree voluntarily consented to Trooper Green's search of his luggage. Pursuant to a plea agreement with the State, Hembree entered conditional guilty pleas to the possession with intent to deliver charges, reserving the right to appeal the district court suppression ruling. In exchange for his pleas, the State dismissed the conspiracy charges. The district court sentenced Hembree to concurrent prison terms of three to seven years. This appeal followed.

**STANDARD OF REVIEW**

[¶ 7] When reviewing a district court's decision on a motion to suppress evidence, we defer to the court's findings on factual issues unless they are clearly erroneous. *Campbell v. State*, 2004 WY 106, ¶ 9, 97 P.3d 781, 784 (Wyo.2004). We view the evidence in the light most favorable to the district court's decision because it is in the best position to assess the witnesses' credibility, weigh the evidence and make the necessary inferences, deductions and conclusions. *Id.* The constitutionality of a particular search or seizure, however, is a question of law that we review *de novo*. *Id.*

**DISCUSSION**

[¶ 8] Before we begin our review, we pause to comment on Hembree's statement of the issue. Although it states briefly and concisely the action and ruling of the trial court claimed to be erroneous, it fails to state why it is claimed to be erroneous. Rule 7.01(d) of the Wyoming Rules of Appellate Procedure requires that an appellate brief contain a statement of the issues presented for review. The statement of the issues presented on appeal is designed to assist the court. *Strang Telecasting, Inc. v. Ernst*, 610 P.2d 1011, 1015 (Wyo.1980). An understanding of the issues is the beginning point of orderly consideration by a reviewing court. The broad form of the issue presented here

---

1. During an interview following his arrest, Hembree revealed that he was transporting the drugs   to Missouri for Ronnie McDowell.

does nothing to focus attention to any specific claim of error. In every case the issue could be phrased "the judgment is erroneous" but that is not what the rules envision. *Cline v. Safeco Ins. Cos.*, 614 P.2d 1335, 1337 (Wyo.1980) (abstract statement to the effect that summary judgment was improperly granted "is not a particularly helpful statement of an issue"). To best assist this Court, each issue should consist of a concise statement of the point of law sought to be argued and reviewed.

[¶ 9] Further, a clear statement of the issues facilitates full advocacy and affords the opportunity for clarification by meaningful questions directed to the issues. A concise statement of the reason why a judgment is in error serves to inform and provide to adverse parties a fair basis for response. It should also prove to be of great assistance to appellants' counsel in separating meritorious points from those which have no realistic chance of success on appeal. Counsel will find that it is extremely difficult to draft a proper point relied on if the error has not been properly preserved below, if no case authority can be found, if the evidence supporting the contention cannot be succinctly specified, or if reversal is foreclosed by the applicable standard of review.

[¶ 10] Because of Hembree's abstract statement of the issue, this Court is forced to deconstruct the argument portion of his brief to determine and clarify the nature of the specific contentions asserted. Besides adding to the appellate time and resources required for determination of this appeal, it also creates the obvious problem that we may interpret the thrust of Hembree's contentions differently than was intended by Hembree. Within the context of this regrettable state of affairs we have done our best to give Hembree's brief a fair reading and discern his real points of contention. In doing so, we find that Hembree faults the district court's suppression ruling on two discrete grounds—

the legality of the initial detention and the voluntariness of his consent to the search of his luggage.

### The Detention

[¶ 11] Hembree claims Trooper Green violated his constitutional rights under the Fourth Amendment to the United States Constitution by unreasonably detaining him to investigate his authority to operate the rental car. He contends the trooper should have simply issued the appropriate traffic tickets and released him instead of injecting himself into a civil contract dispute with the rental car company. In this regard, Hembree portrays his detention as an unjustifiable attempt by Trooper Green to "enforce a civil contract" between private parties in another state.[2]

[¶ 12] The Fourth Amendment protects individuals from "unreasonable searches and seizures." The detention of an individual during a traffic stop, even if only for a brief period of time, constitutes a seizure within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809–10, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996); *Campbell*, ¶ 11, 97 P.3d at 784. The reasonableness of a traffic stop detention under the Fourth Amendment is determined by applying the two-part inquiry set forth in *Terry v. Ohio*, 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968):(1) whether the initial stop was justified; and (2) whether the officer's actions during the detention were "reasonably related in scope to the circumstances that justified the interference in the first instance." *O'Boyle v. State*, 2005 WY 83, ¶ 46, 117 P.3d 401, 414 (Wyo. 2005); *Campbell*, ¶ 11, 97 P.3d at 784. *See also United States v. Holt*, 264 F.3d 1215, 1220 (10th Cir.2001); *United States v. Wood*, 106 F.3d 942, 945 (10th Cir.1997). Hembree's complaint concerns only the second part of the *Terry* analysis—the reasonableness of the detention.

---

2. Hembree also contends that Trooper Green had no authority to impound the vehicle and, as such, he had no legal basis to detain him pending a response from Enterprise. The cases cited by Hembree in support of this argument pertain to non-consensual vehicle impoundments—that is, a police seizure without the consent of the vehicle's lawful owner. Hembree identifies no authority which addresses law enforcement's authority to impound a vehicle at its owner's request, as was done in this case. In the absence of any legal authority supporting this contention, we decline to consider it further.

[¶ 13] Generally, a detention resulting from a routine traffic stop must last "no longer than necessary to effectuate the purpose of the stop, and the scope of the detention must be carefully tailored to its underlying justification." *O'Boyle*, ¶ 47, 117 P.3d at 414 (emphasis omitted) (citing *Campbell*, ¶ 12, 97 P.3d at 784; *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325–26, 75 L.Ed.2d 229 (1983)). In *Campbell*, we noted:

> During a routine traffic stop, a law enforcement officer may request the driver's proof of insurance, operating license, and vehicle registration, run a computer check, and issue a citation or warning. The officer may detain the driver and his vehicle only for the period of time reasonably necessary to complete these routine matters. Once the driver has produced a valid driver's license and proof that he is entitled to operate the vehicle, he must be allowed to proceed without further delay.

*Campbell*, ¶ 12, 97 P.3d at 785 (citations omitted). *See also United States v. Elliott*, 107 F.3d 810, 813 (10th Cir.1997); *Wood*, 106 F.3d at 945; *O'Boyle*, ¶ 47, 117 P.3d at 414; *Lindsay*, 2005 WY 34, ¶ 19, 108 P.3d 852, 857 (Wyo.2005).

[¶ 14] In this case, the district court concluded that Hembree's continued detention following the traffic stop to verify his authority to operate the rental vehicle was constitutional under the circumstances. We agree. Recently, we examined a similar constitutional challenge to the propriety of an extended traffic stop detention for such purposes in *Lindsay v. State*, 2005 WY 34, 108 P.3d 852 (Wyo.2005). In that case, we determined that the investigation of a potential unauthorized use of a rental vehicle was a reasonably sufficient reason to detain a driver after a traffic stop. *Lindsay*, ¶ 25, 108 P.3d at 859. We later reaffirmed that holding in *Johnson v. State*, 2006 WY 79, ¶ 11, 137 P.3d 903, 906 (Wyo.2006). Hembree provides no persuasive reason to deviate from what we said in *Lindsay* and *Johnson*. Hembree produced an invalid driver's license and no proof that he was entitled to drive the vehicle. Trooper Green detained Hembree only for a period of time sufficiently necessary to issue the traffic citations and to complete his investigation

into Hembree's authority to possess and operate the rental car. Under the circumstances, we decline to disturb the district court's ruling on this issue.

### Consent to Search

[¶ 15] Hembree contends that the search of his luggage was constitutionally infirm under the Fourth Amendment because his consent to the search was not voluntary. Before discussing this claim, we must first comment on the State's argument that Hembree lacks standing to challenge the search of his luggage. As the State points out, an unauthorized operator of a rental car generally has no legitimate expectation of privacy in the car and, thus, lacks standing to object to a search of the vehicle. *United States v. Edwards*, 242 F.3d 928, 936 (10th Cir.2001); *United States v. Wellons*, 32 F.3d 117, 119 (4th Cir.1994); *United States v. Boruff*, 909 F.2d 111, 117 (5th Cir.1990); *United States v. Obregon*, 748 F.2d 1371, 1374–75 (10th Cir. 1984). However, the evidence sought to be suppressed in this case did not derive from a general search of the rental car but was discovered during Trooper Green's search of Hembree's personal luggage. The Tenth Circuit Court of Appeals has recognized that, although an unauthorized driver has no privacy rights in the motor vehicle, he may possess a legitimate expectation of privacy in his personal luggage stored within the vehicle. *Edwards*, 242 F.3d at 936–37. *But see Wellons*, 32 F.3d at 119–20 (one who has no legitimate claim to the car he is driving cannot have any reasonable expectation of privacy in the bags found within the car).

[¶ 16] We note that the State did not raise the issue of standing in the district court and, consequently, there are no findings by the district court as to whether Hembree had a reasonable expectation of privacy in his luggage. The State's argument raises the question whether it should be allowed to raise the standing issue on appeal after it failed to do so in the district court. Generally, this Court will not consider issues raised for the first time on appeal. *Davis v. City of Cheyenne*, 2004 WY 43, ¶ 26, 88 P.3d 481, 490 (Wyo.2004); *Joyner v. State*, 2002 WY 174, ¶ 13, 58 P.3d 331, 336 (Wyo.2002). Several

courts which have considered the government's failure to raise the issue of standing in the district court have determined that such a failure constitutes a waiver of that issue on appeal. *See United States v. De-Gasso,* 369 F.3d 1139, 1143 n. 3 (10th Cir. 2004); *United States v. Kelley,* 140 F.3d 596, 602 n. 3 (5th Cir.1998); *United States v. Gonzalez,* 71 F.3d 819, 827 n. 18 (11th Cir. 1996); *United States v. Price,* 54 F.3d 342, 346 (7th Cir.1995). Other courts have reached the opposite conclusion and have declined to find a waiver. *See United States v. Upham,* 168 F.3d 532, 534 (1st Cir.1999); *United States v. Wanless,* 882 F.2d 1459, 1462–63 (9th Cir.1989). Because we are affirming the district court's denial of Hembree's motion to suppress, we will defer our resolution of this question to another day.

■ [¶ 17] We now turn to Hembree's contention that his consent to the search of his luggage was involuntary. Hembree's argument appears to be threefold. First, Hembree argues that his consent was involuntary because it was preceded by an unlawful detention. This argument fails because we have held that the extended detention to investigate the rental car situation was lawful. Second, he contends that his consent was not validly obtained because Trooper Green exceeded the permissible scope of the traffic stop by questioning him about his travel plans and the presence of drugs. In this regard, Hembree depicts his detention as an unlawful drug investigation and equates Trooper Green's conduct to that which we condemned in *O'Boyle* and *Campbell.* We disagree with Hembree's assessment.

[¶ 18] The facts of this case are easily distinguishable from *O'Boyle* and *Campbell.* In *O'Boyle,* we recognized that a reasonable amount of questioning about travel plans during a traffic stop is permissible under the Fourth Amendment. *O'Boyle,* ¶ 48, 117 P.3d at 414. *See also United States v. Alcaraz–Arellano,* 441 F.3d 1252, 1258 (10th Cir.2006); 4 Wayne L. LaFave, *Search and Seizure*

§ 9.3(d), 392–95 (4th ed.2004), and the cases cited therein. However, in that case the trooper executing the traffic stop extensively questioned O'Boyle about matters beyond his travels plans, such as what he did for a living, how long he had been doing it, why he was visiting his son in Boston, his son's name, date of birth, address and phone number, how long his son had been in Boston, what college his son attended and what classes he was taking, the name of his son's college mascot, why he was driving rather than flying to Boston, the price of airfare from San Francisco to Boston, why the rental car was in his daughter's name, his daughter's phone number and where his daughter was at the time. *O'Boyle,* ¶¶ 7, 10, 32, 117 P.3d at 404–05, 410–11. We found that the trooper's intrusive questioning exceeded the permissible scope of the stop and was constitutionally unreasonable. In this case, on the other hand, Trooper Green's questions were limited in scope to Hembree's travel activities and matters concerning the rental car. Such questions were entirely proper under the circumstances. *See Alcaraz–Arellano,* 441 F.3d at 1258 (an officer may ask questions about the motorist's travel plans and authority to operate the vehicle). Despite Hembree's argument to the contrary, we see nothing excessive or unreasonable about the questions asked by Trooper Green.

[¶ 19] Likewise unpersuasive is Hembree's argument that Trooper Green exceeded the scope of the stop by asking him about the presence of drugs in his luggage. In *Campbell,* we held that an officer may not ask about drugs during the course of a traffic stop unless the officer has a reasonable suspicion that the detained motorist is engaged in illegal activity. *Campbell,* ¶¶ 12–14, 97 P.3d at 785. The problem with Hembree's argument is that the district court found that the challenged questions occurred after Hembree's *detention on the traffic violation had terminated.*[3] Trooper Green had returned Hembree's expired driver's license, explained to Hembree that the vehicle he was driving was being impounded, and ad-

---

**3.** While Hembree's brief contains a variation of the facts adduced at the hearing on the motion to suppress, he does not directly challenge the factual findings of the district court. Given our

deferential standard of review and the lack of cogent argument supporting a contrary result, we accept the district court's findings on this matter.

vised Hembree that he was free to take his luggage and walk on down the road, thus concluding the detention. As a courtesy, Trooper Green offered to drive Hembree and his sister to a nearby motel or bus station. Any interaction occurring in this context was purely consensual. *See United States v. West,* 219 F.3d 1171, 1176 (10th Cir.2000) (a traffic stop becomes a consensual encounter when the officer returns the driver's license and other documents and the motorist is free to terminate the encounter). This includes Trooper Green's questions regarding illegal drugs. Under the circumstances, we cannot conclude that the trooper transgressed constitutional boundaries.

 [¶ 20] Lastly, Hembree argues that his consent was coerced. Hembree appears to be claiming that he was forced into accepting Trooper Green's offer for a ride into town and consenting to the trooper's search of his luggage. Whether Hembree voluntarily consented to the search is a question of fact which must be determined in light of the totality of the circumstances. *Grant v. State,* 2004 WY 45, ¶ 22, 88 P.3d 1016, 1021 (Wyo.2004). Some of the factors which may be considered in assessing whether the consent was voluntary include: the way the officer phrased the request for permission to search; whether the officer told the individual he could refuse the request; and the presence of other coercive factors. *Stamper v. State,* 662 P.2d 82, 87 (Wyo.1983).

[¶ 21] The district court specifically found that Hembree freely and voluntarily consented to the search, noting that Trooper Green's request to search was preceded by the trooper's advisement that Hembree was free to grab his bags and walk on down the road, and that Hembree knew at the time he consented that he was free to leave. Our review of the record discloses ample evidence to support the district court's finding. The testimony of Hembree and Trooper Green at the suppression hearing and the videotape of the traffic stop show that the trooper gave Hembree the option of leaving with his bags or accepting a ride to a nearby motel, and that Hembree knew he was free to walk away instead of accepting the trooper's offer. The videotape clearly indicates that the at-

mosphere surrounding the traffic stop and Trooper Green's request to search was not coercive or overbearing, and that the trooper never pressured Hembree in any way into accepting a ride or consenting to the search of his luggage. In light of the totality of the circumstances surrounding Hembree's consent, Hembree's complaints are unfounded.

### CONCLUSION

[¶ 22] We hold that the roadside detention to determine Hembree's authority to possess and operate the rental car was reasonable under the Fourth Amendment. We also hold that Hembree's consent to the search of his luggage was given voluntarily. The judgment and sentence of the district court is affirmed.