2008 WY 78

**Zacharia Charles COHEN, Appellant
(Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

**No. S–07–0082.**

Supreme Court of Wyoming.

July 14, 2008.

Representing Appellant: Diane M. Lozano, Wyoming State Public Defender; Tina N. Kerin, Appellate Counsel; Donna D. Domonkos, Senior Assistant Appellate Counsel. Argument by Ms. Kerin.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Paul S. Rehurek, Senior Assistant Attorney General. Argument by Mr. Rehurek.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

GOLDEN, Justice.

[¶ 1] A jury convicted Appellant, Zacharia Charles Cohen, of one misdemeanor and five felonies. Cohen challenges the sufficiency of the evidence to sustain his convictions on two of the felonies, attempted first degree murder and aggravated assault and battery. He also claims the district court erred in denying his motion to suppress evidence. We affirm.

## ISSUES

[¶ 2] Cohen offers the following issues: [1]

---

1. Cohen originally included a fourth issue that challenged the legality of his sentences. At oral argument, Cohen withdrew the issue from this Court's consideration.

I. Whether there was insufficient evidence to prove Appellant attempted to commit first degree homicide when there was no evidence of a substantial step towards committing first degree homicide.

II. Whether there was insufficient evidence to prove Appellant committed aggravated assault as charged by the State since there was no evidence of a substantial step towards committing aggravated assault.

III. Whether the district court erred when it denied Appellant's motion to suppress evidence seized after an illegal stop.

## FACTS

[¶ 3] On March 2, 2006, agents of a Division of Criminal Investigation (DCI) Drug Task Force were conducting surveillance on Cohen's residence in Casper in an effort to find and arrest Cohen on a bench warrant. The warrant was issued in a Natrona County drug case after Cohen failed to appear at his district court arraignment. During their surveillance, the agents observed a Caucasian male exit the residence and drive away in a white pickup truck. The truck stopped at a nearby convenience store where Special Agent Lonny TeBeest contacted the driver, Darwin Haselhuhn. Haselhuhn was ultimately arrested on some traffic violations, and his vehicle was towed to E & F Wrecker Service. Believing that Haselhuhn might lead officers to Cohen, Special Agent Tina Trimble asked personnel at E & F Wrecker Service to contact her when Haselhuhn attempted to retrieve his truck.

[¶ 4] Around noon the next day, March 3, E & F Wrecker Service notified Agent Trimble that Haselhuhn had arrived in a black Camaro to pay the storage fee, and that he was leaving to get the registration for the truck so it could be released. Agent Trimble responded to the E & F Wrecker location, accompanied by Special Agent Kevin Norcross. As the agents approached the business, they saw the black Camaro coming toward them, with Haselhuhn situated in the passenger seat. Agents Trimble and Norcross followed the Camaro to the Mountain View Conoco, where both Haselhuhn and the driver—recognized by the agents to be Cohen—exited the vehicle.

[¶ 5] Agent Norcross approached the Camaro on foot while Agent Trimble maneuvered her unmarked car to block the vehicle from leaving. Agent Norcross contacted Cohen, who was back inside the vehicle sitting in the driver's seat, and identified himself. Cohen immediately put the Camaro in gear and, as Agent Norcross reached inside the driver's window in an attempt to pull the keys out of the ignition, Cohen sped away, barely avoiding striking Agent Trimble's car. As a result of Cohen's actions, Agent Norcross sustained minor injuries to both arms.

[¶ 6] Agent Trimble pursued Cohen, while Agent Norcross remained at the Conoco station with Haselhuhn. Officers from other law enforcement agencies joined in the pursuit of Cohen. Casper Police Officer Chris Wenberg, who had been listening to the events over the radio, positioned himself at McKinley and F Streets, anticipating that Cohen might be traveling that way. A few minutes later, Officer Wenberg saw the Camaro approaching the area and he attempted, without success, to deploy his stop sticks to deflate its tires. Shortly thereafter, police found the Camaro abandoned at Jackson and B Streets. A citizen reported that the driver of the vehicle, a white male wearing a gray shirt, had run away on foot.

[¶ 7] Officer Wenberg went to the location and, along with other officers, began a grid search of the area. While driving southbound on McKinley Street, Officer Wenberg observed a SUV stopped on the right side of the street, between B Street and Yellowstone Highway, with its brake lights illuminated. He then noticed a white male, wearing an orange sweatshirt and white hat, coming from between two houses on the left. The man, who matched Cohen's physical description, crossed McKinley Street and entered the passenger side of the SUV. The SUV then pulled away from the curb, prompting Officer Wenberg to activate his overhead lights and execute a stop of the vehicle.[2]

[¶ 8] Officer Wenberg approached the passenger side of the SUV and asked the

---

**2.** The location of the stop was approximately one block west of the abandoned Camaro.

passenger, later identified as Cohen, for identification. Cohen claimed to have no identification and stated his name was Shawn Davis. When asked for his date of birth, Cohen provided a disjointed response that further raised the officer's suspicions. Fairly convinced that the passenger was, in fact, Cohen, Officer Wenberg called for backup. He then opened the passenger door and told Cohen and the driver to keep their hands where he could see them.

[¶ 9] Thereafter, Officer Wenberg saw Cohen move his left hand, which had been resting in his lap, toward his left side. The officer placed his hand on Cohen's right arm and, once again, told Cohen to keep his hands where they could be seen, but Cohen tipped to the right and continued to move his left hand until it disappeared from view. Officer Wenberg reached around Cohen and managed to grab Cohen's left wrist, but not before Cohen pulled a black Ruger .40 caliber semi-automatic pistol from the waistband of his pants. In the ensuing struggle, Officer Wenberg dislodged the pistol from Cohen's grip, causing it to fly through the air and land in a cup holder located on the front console. Officer Wenberg then pulled Cohen out of the SUV and onto the ground, where the struggle continued. With the aid of other officers arriving at the scene, Cohen was eventually subdued and arrested.

[¶ 10] Shortly before Officer Wenberg's struggle with Cohen began, Casper Police Sergeant Mark Trimble arrived at the scene of the stop and positioned himself by the driver's side door of the SUV. As Sergeant Trimble was monitoring the exchange between Cohen and Officer Wenberg, he noticed Cohen's left hand moving behind his back toward his waistband. Sergeant Trimble pulled his gun from its holster and shouted, "He's reaching." He pointed his gun at Cohen and told him to stop. Cohen did not heed the sergeant's commands and continued to move his left hand toward his back. Sergeant Trimble then saw Cohen bringing his left hand forward, holding the grip of a black semi-automatic pistol.

[¶ 11] Police searched Cohen incident to his arrest and found $3,460.00, mostly in $100.00 bills, in his rear pockets. An examination of the pistol disclosed that the safety was off, a live round of ammunition was in the chamber and the magazine was fully loaded. The only action needed to fire the pistol was a single pull of the trigger. Police later searched the Camaro and found 14 grams of methamphetamine and 73 small plastic bags of the type used to package and distribute methamphetamine, which were secreted inside a camera bag.

[¶ 12] On March 21, 2006, Cohen made a telephone call from the Natrona County Detention Center to a friend. As with all non-privileged inmate calls from the jail, that telephone call was tape-recorded. During that conversation, Cohen related to his friend, "I was trying to get my gun cocked so I could blow his [Officer Wenberg's] fuckin teeth out the back of his head, but I didn't get a chance to do that."

[¶ 13] The State ultimately filed a six-count Information, charging Cohen with: recklessly engaging in conduct which placed Special Agent Kevin Norcross in danger of death or serious bodily injury (Count 1), a violation of Wyo. Stat. Ann. § 6–2–504(a) (LexisNexis 2007); attempting to cause bodily injury to Officer Chris Wenberg with a deadly weapon (Count 2), a violation of Wyo. Stat. Ann. § 6–2–502(a)(ii) (LexisNexis 2007); attempted first degree murder of Officer Chris Wenberg (Count 3), a violation of Wyo. Stat. Ann. §§ 6–1–301(a)(i) and 6–2–101(a) (LexisNexis 2007); possessing a deadly weapon with unlawful intent (Count 4), a violation of Wyo. Stat. Ann. § 6–8–103 (LexisNexis 2007); possessing methamphetamine in an amount greater than three grams (Count 5), a violation of Wyo. Stat. Ann. § 35–7–1031(c)(ii) (LexisNexis 2007); and possessing methamphetamine with intent to deliver (Count 6), a violation of Wyo. Stat. Ann. § 35–7–1031(a)(i) (LexisNexis 2007). The aggravated assault and battery charge (Count 2) was accompanied by an habitual criminal enhancement under Wyo. Stat. Ann. § 6–10–201(a) and (b)(ii) (LexisNexis 2007). Cohen later filed a motion to suppress the evidence derived from the stop of the SUV, claiming it was the product of an unlawful seizure under both the United States and Wyoming Constitutions. Specifically, Cohen

alleged Officer Wenberg lacked sufficient reasonable suspicion to justify the stop of the vehicle. The district court disagreed and denied Cohen's suppression motion.

[¶ 14] Cohen's jury trial commenced on October 16 and concluded on October 20, 2006. The jury found Cohen guilty on all six counts and adjudged him to be a habitual criminal. The district court sentenced Cohen to one-year confinement on Count 1, life imprisonment without the possibility of parole on Counts 2, 3 and 4, and a term of imprisonment of 13 to 18 years on Counts 5 and 6.[3] The district court ordered that the sentences on Counts 1, 5 and 6 be served consecutively to the life sentence. This appeal followed.

## DISCUSSION

### Sufficiency of the Evidence

#### A. Standard of Review

[¶ 15] Cohen contends the trial evidence is insufficient to sustain his convictions for attempted first degree murder and aggravated assault and battery. When reviewing sufficiency of the evidence claims, we view the evidence, and any applicable inferences that may be reasonably drawn from it, in the light most favorable to the State. *Dettloff v. State*, 2007 WY 29, ¶ 22, 152 P.3d 376, 383 (Wyo.2007); *Grissom v. State*, 2005 WY 132, ¶ 24, 121 P.3d 127, 136 (Wyo.2005). We have consistently held that it is the jury's responsibility to resolve conflicts in the testimony, weigh the evidence and draw reasonable inferences from the facts. *Sotolongo-Garcia v. State*, 2002 WY 185, ¶ 11, 60 P.3d 687, 689 (Wyo.2002). To that end, we must presume that the jury resolved any conflict in the evidence in favor of the State. *Id.* It is not our task, let alone our place, to reweigh the evidence or reexamine the credibility of the witnesses. *Pacheco v. State*, 2004 WY 160, ¶ 6, 102 P.3d 887, 889 (Wyo.2004). Our duty is to determine whether a quorum of reasonable and rational individuals could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.; see also Grissom*, ¶ 24, 121 P.3d at 136; *Sotolongo-Garcia*, ¶ 11, 60 P.3d at 689.

### B. Attempted first degree murder

[¶ 16] The jury found Cohen guilty of attempted first degree murder. Wyo. Stat. Ann. § 6-1-301 defines the crime of attempt and states in pertinent part:

(a) A person is guilty of an attempt to commit a crime if:

(i) With the intent to commit the crime, he does any act which is a substantial step towards commission of the crime. A "substantial step" is conduct which is strongly corroborative of the firmness of the person's intention to complete the commission of the crime[.]

According to Wyo. Stat. Ann. § 6-2-101(a), "[w]hoever purposely and with premeditated malice ... kills any human being is guilty of murder in the first degree."

[¶ 17] Cohen contends his conviction cannot stand because the evidence is insufficient to support the jury's determination that he engaged in conduct constituting a substantial step toward completing his objective—the first degree murder of Officer Wenberg. According to Cohen, his act of pulling the gun from his waistband was not strongly corroborative of an intention to commit first degree murder. He suggests other possible motives for his act, such as simply attempting to distance himself from the weapon or procure his escape.

[¶ 18] Whether a defendant has engaged in a substantial step toward the commission of a crime is a question of fact. Each case, therefore, must be analyzed within the context of its individual facts and circumstances.[4] Since the jury is the ultimate finder of fact, our only task in this case is to determine whether a "quorum of reasonable and rational individuals could have found" conduct constituting a substantial step. We have no reservations in upholding the jury's determination given the evidence on this issue.

---

3. The district court determined that Counts 2, 3 and 4 merged for sentencing purposes as did Counts 5 and 6.

4. We have reviewed the cases cited by the parties but, because each case is fact specific, they are of only slight relevance and need not be discussed in detail.

[¶ 19]   Among the evidence considered by the jury was the fact that Cohen was resisting arrest, having already injured one officer, and leading officers on a high speed automobile chase.   When finally cornered, he gave false information.   Cohen refused to obey Officer Wenberg's instruction to keep his hands in plain sight and, instead, moved his left hand behind his back to retrieve a loaded and ready-to-fire handgun.   Even after Officer Trimble pulled his weapon and told Cohen to stop, Cohen continued to pull the weapon out from his waistband and bring it forward, with his hand firmly on the grip. By his own admission, Cohen "was trying to get [his] gun cocked so [he] could blow [Officer Wenberg's] fuckin teeth out the back of his head."   The only reason Cohen could not complete his intended action of shooting Officer Wenberg was because of Officer Wenberg's prudent actions in grabbing Cohen and dislodging the weapon from his grasp. This evidence is sufficient for a reasonable jury to find that Cohen engaged in substantial conduct strongly corroborative of his intention to murder Officer Wenberg.

### C.   Aggravated assault and battery

[¶ 20]   Cohen was convicted of aggravated assault and battery under § 6–2–502(a)(ii)—attempting to cause bodily injury to Officer Wenberg with a deadly weapon. Cohen, once again, takes issue with the sufficiency of the evidence establishing the "attempt" element of the crime.   Cohen's argument is essentially the same as the one made concerning his attempted murder conviction—that his act of pulling the gun from his waistband was ambiguous and could not be construed as constituting a substantial step toward the commission of the intended crime. Our response is likewise essentially the same. If the facts and circumstances surrounding Cohen's drawing of a loaded gun are sufficient to sustain his conviction for the attempted murder of Officer Wenberg, they are likewise sufficient to sustain his conviction for attempting to cause bodily injury to the officer.

*Motion to Suppress*

[¶ 21]   Cohen contends that Officer Wenberg's investigatory stop of the SUV was constitutionally infirm.   Relying primarily on the discrepancy between the gray sweatshirt [5] he was reported to be wearing and the orange sweatshirt the male suspect was wearing when observed by Officer Wenberg, Cohen claims Officer Wenberg acted on a "hunch" and did not have a reasonable and sufficient basis for suspecting he was in the SUV before stopping it.   He therefore faults the district court for not suppressing the incriminating evidence obtained following the stop.[6]

[¶ 22]   When reviewing a district court's decision on a motion to suppress evidence, we defer to the court's factual findings unless they are clearly erroneous.   *Hembree v. State,* 2006 WY 127, ¶ 17, 143 P.3d 905, 907 (Wyo.2006) (citing *Campbell v. State,* 2004 WY 106, ¶ 9, 97 P.3d 781, 784 (Wyo.2004)). We consider the evidence in the light most favorable to the district court's determination because it is in the best position to assess the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions.   *Id.* When the district court does not make specific factual findings, we will uphold its general ruling if the ruling is supported by any reasonable view of the evidence.   *Innis v. State,* 2003 WY 66, ¶ 13, 69 P.3d 413, 418 (Wyo.2003). The constitutionality of a particular search or seizure, however, is a question of law that we review *de novo.   Id.; see also Hembree,* ¶ 7, 143 P.3d at 907, *Campbell,* ¶ 9, 97 P.3d at 784.

[¶ 23]   Before discussing the merits of Cohen's complaint, we must address a preliminary matter.   In his motion to suppress in the district court, Cohen invoked both the Fourth Amendment to the United States Constitution and Article 1, Section 4 of the Wyoming Constitution as grounds for sup-

---

5.   The trial testimony indicates that Cohen was reported to be wearing a gray shirt, while the suppression hearing testimony indicates it was a gray sweatshirt.

6.   Cohen does not challenge, in any manner, the events that transpired after the stop of the SUV.

pressing the evidence.[7] On appeal, Cohen bases his challenge to the legality of the stop exclusively on Fourth Amendment principles. Although he references the Wyoming Constitution, he does not provide an independent state constitutional analysis. We have consistently stated that the failure to present a proper argument supporting " 'adequate and independent state grounds' ... prevents this court, as a matter of policy, from considering other than the federal constitutional principles at issue...." *Vassar v. State*, 2004 WY 125, ¶ 14, 99 P.3d 987, 993 (Wyo.2004) (quoting *Wilson v. State*, 874 P.2d 215, 219 (Wyo. 1994), and *Michigan v. Long*, 463 U.S. 1032, 1041, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)). *See also Rideout v. State*, 2005 WY 141, ¶ 15, 122 P.3d 201, 205 (Wyo.2005); *Fender v. State*, 2003 WY 96, ¶ 12, 74 P.3d 1220, 1225 (Wyo.2003); *Meek v. State*, 2002 WY 1, ¶ 7 n. 2, 37 P.3d 1279, 1282 n. 2 (Wyo.2002). Accordingly, we will confine our analysis of Cohen's complaint to federal constitutional authority. *Vassar*, ¶ 14, 99 P.3d at 993.

[¶ 24] *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its progeny establish that a law enforcement officer may stop and temporarily detain a citizen if the officer has an objectively reasonable suspicion that the person has committed or may be committing a crime. *McChesney v. State*, 988 P.2d 1071, 1075 (Wyo.1999) (citing *Wilson*, 874 P.2d at 220). Whether reasonable suspicion exists is determined as follows:

> In order to establish the reasonable suspicion necessary to justify a ... *Terry* or investigatory stop, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences [drawn] from those facts, reasonably warrant that intrusion." *Olson v. State*, 698 P.2d 107, 109 (Wyo.1985) (quoting *Terry v. Ohio*, 392 U.S. at 21, 88 S.Ct. at 1880); *Wilson v. State*, 874 P.2d at 220.
>
> "Reasonable suspicion, like probable cause, is dependant upon both the content of information possessed by police and its degree of reliability. Both fac-

tors—quantity and quality—are considered in the 'totality of the circumstances—the whole picture,' *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981), that must be taken into account when evaluating whether there is reasonable suspicion."

*Jelle v. State*, 2005 WY 111, ¶ 20, 119 P.3d 403, 411 (Wyo.2005) (quoting *McChesney*, 988 P.2d at 1075).

[¶ 25] In *Lopez v. State*, 643 P.2d 682 (Wyo.1982), we held that a police officer's independent observations of an automobile and a suspect driving the car which matched descriptions by eyewitnesses was adequate for an investigatory stop. Similarly, in *Cook v. State*, 631 P.2d 5 (Wyo.1981), we concluded that the circumstances that occurred following a robbery, together with reasonable inferences made by an experienced police officer, furnished adequate grounds for an investigatory stop. In *Parkhurst v. State*, 628 P.2d 1369 (Wyo.1981), police officers were given a description of a car used by two individuals to flee from the scene of a murder and the direction the car was traveling. We held that the officers were justified in making an investigatory stop when a car fitting that description was spotted.

[¶ 26] After reviewing the record in this case, we have no trouble concluding that Officer Wenberg possessed reasonable suspicion justifying the investigatory stop of the SUV. The record discloses the following facts: (1) Officer Wenberg had been following the events over his police radio and knew there was a warrant out for Cohen's arrest; (2) Cohen was reported to be on foot in the area where the grid search was being conducted; (3) the radio reports indicated that Cohen ran west in the direction of McKinley Street after abandoning the Camaro; (4) Officer Wenberg saw a man cross McKinley Street heading west about twenty minutes after Cohen abandoned the Camaro; (5) the male suspect was sighted just a block away from the Camaro; (6) Officer Wenberg saw the suspect coming out from between two

---

**7.** The district court did not distinguish between the constitutional provisions in concluding the stop was proper.

houses, not exiting a residence or other structure; (7) the officer knew from experience that this neighborhood normally had very little pedestrian traffic; (8) Officer Wenberg was somewhat familiar with Cohen's physical appearance from his participation in a drug investigation involving Cohen a few months earlier; (9) the suspect was the "right size and shape" of Cohen, although his clothing was a little different from the description transmitted earlier over the radio for Cohen; (10) the suspect matched the physical description of Cohen contained in a flier posted at the police station; and (11) Officer Wenberg observed the suspect enter the passenger door of the waiting SUV. Under the circumstances, Officer Wenberg was acting on more than a simple "hunch" when he stopped the SUV. The totality of these factors, along with rationale inferences, supports a reasonable suspicion that Cohen, the person police were searching for, was a passenger in the SUV.

[¶ 27] In reaching this result, we have considered the clothing discrepancy noted by Cohen. However, we find that the discrepancy is insufficient to defeat the existence of reasonable suspicion in light of the other factors present in this case. *See Medrano v. State,* 914 P.2d 804, 807–08 (Wyo.1996) (discrepancy in clothing and vehicle driven by suspect and the person stopped held to be insufficient to defeat reasonable suspicion in view of other circumstances). We hold that the investigatory stop of the SUV was constitutionally permissible under the circumstances.

### CONCLUSION

[¶ 28] We find sufficient evidence in the record to support Cohen's convictions for attempted first degree murder and aggravated assault and battery. We also find that reasonable suspicion existed justifying the investigatory stop of the SUV in which Cohen was a passenger. Affirmed.