2009 WY 59

**Bruce Leon VANKOOTEN,
Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. S-08-0205.

Supreme Court of Wyoming.

April 29, 2009.

Representing Appellant: Dion J. Custis of Dion J. Custis, P.C., Cheyenne, Wyoming.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Paul S. Rehurek; Senior Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

GOLDEN, Justice.

[¶ 1] Appellant Bruce Leon VanKooten entered a conditional guilty plea to felony possession of a controlled substance, reserving the right to appeal the district court's denial of his motion to suppress the cocaine evidence discovered during a search of his vehicle. VanKooten claims the evidence should have been suppressed because the trooper lacked reasonable suspicion to detain him for a canine sniff of the exterior of his vehicle after the lawful traffic stop had concluded. We disagree and affirm the district court's decision denying his motion to suppress.

## ISSUE

[¶ 2] VanKooten offers the following issue:[1]

Did the trial court abuse its discretion and commit reversible error when it denied Appellant's motion for suppression?

## FACTS

[¶ 3] On April 21, 2007, Trooper David Chatfield of the Wyoming Highway Patrol was on duty at the patrol office located at the I-25 port of entry south of Cheyenne when he received a telephone call from Lieutenant Ted Bair of the Torrington division office. Lieutenant Bair told Trooper Chatfield that he had just seen a vehicle traveling south on Highway 85 that matched the description of a vehicle belonging to a person known to be a drug dealer in the Torrington area. Lieutenant Bair explained that he had received information from the Wyoming Division of Criminal Investigation that the driver of the Camaro had been traveling back and forth between Colorado and Torrington dealing drugs. Lieutenant Bair wanted to alert Cheyenne patrol personnel to the fact the individual was headed south on Highway 85 and to be on the lookout for him. There were no instructions to stop or arrest the driver; only a request to observe the vehicle for traffic violations and stop him if he committed a violation. After that, any further actions would depend on the circumstances presented.

[¶ 4] Trooper Chatfield left the division office with his certified drug dog and headed north on Highway 85. Around milepost 40 the trooper spotted the Camaro traveling southbound at a speed of 65 miles per hour. Trooper Chatfield turned his patrol car around and attempted to catch up with the vehicle. The Camaro sped up and began passing other vehicles at a high rate of speed. Trooper Chatfield estimated the car was going as fast as 130 miles per hour. After pursuing the Camaro for approximately ten miles, the trooper managed to get

---

1. Such a general statement of the issue is not particularly helpful to this Court because it fails to identify any specific claim of error regarding the district court's suppression ruling. Yet again, we remind litigants that each appellate issue should include a concise statement of the point of law sought to be argued and reviewed. *Hembree v. State*, 2006 WY 127, ¶¶ 8–10, 143 P.3d 905, 907–08 (Wyo.2006).

close enough for a radar lock. The radar indicated the car was going 125 miles per hour, well above the posted speed limit.

[¶ 5] Trooper Chatfield activated his lights, radioed for assistance, and continued his pursuit of the Camaro. The Camaro continued on for approximately nine more miles. Near milepost 21, the Camaro made a sudden left turn onto Cadillac Road, a county residential gravel road, and stopped after about one-half mile. Trooper Chatfield pulled in behind the Camaro and contacted VanKooten, the driver and sole occupant of the vehicle. He told VanKooten that he had stopped him for going 125 miles per hour and asked him to come back to the patrol car with his driver's license, registration, and proof of insurance.

[¶ 6] As he wrote out a citation for speeding, Trooper Chatfield asked VanKooten where he had been and where he was going. VanKooten indicated he had been in the Torrington/Lingle area delivering a piece of equipment and was headed home to Berthoud, Colorado. During the conversation, VanKooten asked Trooper Chatfield why he turned around on the highway after they passed each other. Trooper Chatfield responded by asking VanKooten why he had sped up to 125 miles per hour. VanKooten stated he did it "for the hell of it."

[¶ 7] Trooper Chatfield issued VanKooten a ticket for the traffic violation, returned his driver's license and other documents, and told him he was free to leave. As VanKooten was walking back to his car, Trooper Chatfield inquired if he could ask him a few more questions. VanKooten agreed. Trooper Chatfield asked VanKooten if he had anything illegal in his car, such as drugs, guns or money. VanKooten replied he did not. The trooper requested permission to search the Camaro, but VanKooten denied the trooper's request.

[¶ 8] Thereafter, Trooper Chatfield told VanKooten he was going to have his drug dog perform an exterior sniff of the Camaro. Trooper Chatfield retrieved the dog from the patrol car and directed him to the vehicle. The dog sat down by the passenger door, alerting to the presence of controlled substances inside the car. Trooper Chatfield then placed the dog inside the Camaro, and the dog alerted to the presence of drugs inside a coat lying on the back seat. Trooper Chatfield searched the coat and found a pipe, as well as scales containing white powder residue. Upon searching the passenger compartment and the trunk, Trooper Chatfield discovered some small "dealer bags" and a plastic shopping bag containing cash, prescription pills, marijuana, and over an ounce of cocaine.

[¶ 9] VanKooten was arrested and charged with one count of felony possession of cocaine in violation of Wyo. Stat. Ann. § 35–7–1031(c)(ii) (LexisNexis 2007). He filed a motion to suppress the drug evidence, claiming it was the product of an unlawful seizure. After a hearing, the district court denied VanKooten's motion, concluding reasonable suspicion existed to further detain him pending the drug sniff. Thereafter, pursuant to a plea agreement, VanKooten pled guilty to the felony possession charge, reserving the right to appeal the denial of his motion to suppress. The district court sentenced VanKooten to three to five years imprisonment, but suspended execution of that sentence in favor of three years supervised probation. This appeal followed.

## STANDARD OF REVIEW

[¶ 10] Our standard for reviewing a challenge to a suppression ruling is well established:

When reviewing a district court's decision on a motion to suppress evidence, we defer to the court's findings on factual issues unless they are clearly erroneous. *Campbell v. State*, 2004 WY 106, ¶ 9, 97 P.3d 781, 784 (Wyo.2004). We view the evidence in the light most favorable to the district court's decision because it is in the best position to assess the witnesses' credibility, weigh the evidence and make the necessary inferences, deductions and conclusions. *Id.* The constitutionality of a particular search or seizure, however, is a question of law that we review *de novo*. *Id.*

*Kunselman v. State*, 2008 WY 85, ¶ 9, 188 P.3d 567, 569 (Wyo.2008) (quoting *Hembree*

*v. State,* 2006 WY 127, ¶ 7, 143 P.3d 905, 907 (Wyo.2006) and citing *Marinaro v. State,* 2007 WY 123, ¶ 7, 163 P.3d 833, 835 (Wyo. 2007); *Grant v. State,* 2004 WY 45, ¶ 10, 88 P.3d 1016, 1018 (Wyo.2004)). If "the district court does not make specific factual findings, we will uphold its general ruling if the ruling is supported by any reasonable view of the evidence." *Cohen v. State,* 2008 WY 78, ¶ 22, 191 P.3d 956, 961 (Wyo.2008) (citing *Innis v. State,* 2003 WY 66, ¶ 13, 69 P.3d 413, 418 (Wyo.2003)).

## DISCUSSION

[¶ 11] VanKooten faults the district court for denying his motion to suppress the drug evidence seized during the search of his car. In particular, he claims the district court erred in concluding that Trooper Chatfield had reasonable suspicion of criminal activity to detain him for a canine sniff of the exterior of his vehicle after the lawful traffic stop had concluded. Thus, he claims the drug evidence obtained during the search was the fruit of a constitutionally infirm detention and should be suppressed.

[¶ 12] Before discussing the merits of VanKooten's complaint, we must address two preliminary matters. First, VanKooten invokes Article 1, Section 4 of the Wyoming Constitution as grounds for suppressing the drug evidence. However, the state constitutional argument presented by VanKooten does not constitute a "precise, analytically sound approach" required for this Court to undertake an independent state constitutional analysis. *See Vassar v. State,* 2004 WY 125, ¶ 14, 99 P.3d 987, 993 (Wyo.2004); *Morgan v. State,* 2004 WY 95, ¶ 20, 95 P.3d 802, 808 (Wyo.2004). In substance, VanKooten attempts to argue that the detention was nonconsensual under Article 1, Section 4. This case, however, is not about consent. At issue is whether Trooper Chatfield had reasonable suspicion to detain him for the dog sniff. VanKooten's state constitutional argument is not only perfunctory, it is irrelevant and not worthy of our further attention.

[¶ 13] Second, VanKooten's argument, in part, consists of an attack on the reliability of an anonymous tip, which he claims supported the information provided by Lieutenant Bair to Trooper Chatfield concerning his drug activities. The problem with VanKooten's argument on this point is that it lacks any evidentiary foundation. That is, there is absolutely no evidence in the record concerning the alleged anonymous tip, let alone the information it provided and its alleged impact on the events leading to VanKooten's ultimate arrest.[2] Consequently, we will not consider this aspect of VanKooten's argument.

[¶ 14] We now turn our attention to whether VanKooten's brief detention for the canine sniff violated the Fourth Amendment. The law is well settled that a law enforcement officer may detain a motorist if the officer has an "objectively reasonable and articulable suspicion" that the person has committed or may be committing a crime. *Barch v. State,* 2004 WY 79, ¶ 9, 92 P.3d 828, 832 (Wyo.2004); *Damato v. State,* 2003 WY 13, ¶ 13, 64 P.3d 700, 706 (Wyo.2003); *see also United States v. Williams,* 271 F.3d 1262, 1267 (10th Cir.2001). The existence of objectively reasonable suspicion of criminal activity is determined by evaluating the totality of the circumstances. *Damato,* ¶ 16, 64 P.3d at 707. The "whole picture" must be considered, "[c]ommon sense and ordinary human experience are to be employed, and deference is to be accorded a law enforcement officer's ability to distinguish between innocent and suspicious actions." *Id.* (citing *United States v. Wood,* 106 F.3d 942, 946 (10th Cir.1997)).

[¶ 15] Considering the whole picture, along with rationale inferences, we agree with the district court that Trooper Chatfield possessed reasonable suspicion to detain VanKooten. The factors supporting the trooper's reasonable suspicion are: (1) Trooper Chatfield had information that the driver of a white Camaro with orange stripes and Colorado license plates was transporting drugs between Colorado and Torrington and dealing drugs in the Torrington area; (2) the Camaro was spotted five miles south of Torrington on Highway 85, headed south; (3)

---

2. The only information regarding the alleged anonymous tip is found in VanKooten's suppression motion in the district court and his appellate brief.

when Trooper Chatfield first saw the Camaro, it was traveling at a speed of 65 miles per hour; (4) the moment VanKooten saw Trooper Chatfield pass him from the opposite direction and turn around, he drastically increased his speed to 125 miles per hour and attempted to elude the trooper for nearly twenty miles; (5) in one last effort to elude Trooper Chatfield, VanKooten abruptly turned off Highway 85 onto Cadillac Road and traveled an additional one-half mile; and (6) Cadillac Road is a county residential roadway that does not lead to VanKooten's stated travel destination of Berthoud, Colorado. We believe the aggregate of these factors provided Trooper Chatfield with an objectively reasonable basis for suspecting that VanKooten was involved in criminal activity, thus warranting VanKooten's further detention pending the canine sniff of his vehicle.

## CONCLUSION

[¶ 16] We find that reasonable suspicion existed justifying VanKooten's detention. We therefore hold that the district court properly denied VanKooten's motion to suppress. Affirmed.