2015 WY 62

**Patrick J. REGAN, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. S–14–0196.**

Supreme Court of Wyoming.

April 28, 2015.

Representing Appellant: Office of the State Public Defender: Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Eric M. Alden, Senior Assistant Appellate Counsel. Argument by Mr. Alden.

Representing Appellee: Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General; Darrell D. Jackson, Faculty Director, A. Walker Steinhage, Student Director, and John D. Ringenberg, Student Intern, of the Prosecution Assistance Program. Argument by Mr. Ringenberg.

Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.

DAVIS, Justice.

[¶ 1]   A jury convicted Appellant Patrick J. Regan of felony possession of marijuana. On appeal, he contends that the evidence was insufficient to support his conviction in three respects. We agree with one of those contentions and therefore reverse his conviction for felony possession. However, we find the evidence sufficient to support the lesser included offense of misdemeanor possession and remand for resentencing on that offense.

### ISSUE

[¶ 2]   Was the evidence presented at trial sufficient to support a verdict that Regan constructively possessed a felony amount of marijuana?

### FACTS

[¶ 3]   On October 26, 2012, Regan and his roommate [1] Shayne Trujillo drove from Denver to Gillette.[2] A six-year veteran of the Gillette Police Department, Officer Troy Cyr, pulled them over after they stopped at a yield sign because there was no traffic on the roadway to yield to, and because the officer could not tell whether the vehicle had a rear license plate. Regan was the driver and owner. When Officer Cyr approached his window, he immediately smelled raw marijuana and requested that a drug dog be dispatched. Officer Vos arrived on the scene, spoke to Officer Cyr, and explained to Regan and Trujillo why he was there. He also smelled marijuana before retrieving his dog, Jordy, from his patrol vehicle. Jordy alerted at the front passenger door, signaling that it had detected the odor of a controlled substance in the car.

[¶ 4]   Officer Vos then directed Trujillo to get out of the car, looked inside, and saw two glass jars containing what he recognized as marijuana on the passenger floorboard. After further inspection of the vehicle's interior, he discovered a plastic grocery bag, Ziploc sandwich bags, and a large white plastic bin in the passenger and cargo portions of the vehicle. Each contained clumps of a green leafy substance that he recognized as marijuana. The total weight of the marijuana was approximately one and a half pounds. Vos also found paraphernalia commonly associated with the sale of marijuana and $1,000 in cash in the glove box.

[¶ 5]   The officers arrested Regan and Trujillo and took them to the Gillette police station, where Regan voluntarily consented to an interview. Officer Greg Brothers interviewed Regan, and he testified at trial to Regan's account of the journey to Gillette with Trujillo. While still in Denver, Regan saw Trujillo load marijuana into his vehicle. He told Officer Brothers that he had expressly rejected Trujillo's offer to join in Trujillo's plan to make money distributing marijuana because "it wasn't worth the risk."

[¶ 6]   When they arrived in Gillette, Trujillo directed Regan to three different locations, and at each one Trujillo got out of the car and delivered marijuana. Regan remained in the vehicle at each stop. He gave the interviewing officer detailed descriptions of each location and the amount of marijuana Trujillo delivered at each stop. He showed him the locations on a map, and then helped officers identify them in an unmarked police car. Regan admitted that a quarter-ounce of the marijuana found in the car was his, but maintained that the rest of the marijuana in the vehicle belonged solely to Trujillo.

[¶ 7]   Trujillo testified at Regan's trial and corroborated Regan's claim. He confirmed his admission to officers that over a pound of marijuana in the car belonged exclusively to him, and that no one else had anything to do with it. He also confirmed that in the course of entering a guilty plea to felony possession of the marijuana found in Regan's car, he had admitted to the court that more than a pound of marijuana was his.

[¶ 8]   After the substance was seized from Regan's vehicle, it was sent to the Wyoming State Crime Laboratory, where it was ana-

---

1.   There was a female passenger in the rear of the vehicle but the record tells us nothing more about her.

2.   The probable cause affidavit attached to the arrest warrant indicates that the two were on their way to Gillette to attend a party with friends. However, the trial transcript tells us nothing about the purpose of the trip.

lyzed by forensic chemist Lance Allen. Mr. Allen testified that his tests identified tetrahydrocannabinol (THC) in all of the samples, and that THC is the active component in marijuana. When the State asked whether he could therefore confirm that the substance was marijuana, he responded, "I'm not a botanist, I'm a chemist, I identified THC." However, he also testified that one could conclude from a positive THC test that the tested substance was marijuana.

[¶ 9]   The jury found Regan guilty of felony possession of marijuana under Wyo. Stat. Ann. § 35–7–1031(c)(iii). He was sentenced to not less than four nor more than five years of incarceration and a $10,000 fine, which were suspended in favor of five years of supervised probation and a $5,000 fine. This appeal was timely perfected.

## STANDARD OF REVIEW

[¶ 10]   Our standard for reviewing challenges to the sufficiency of the evidence is well-established. We recently restated it as follows:

> We examine and accept as true the State's evidence and all reasonable inferences which can be drawn from it. We do not consider conflicting evidence presented by the defendant. We do not substitute our judgment for that of the jury; rather, we determine whether a jury could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt.

*Dean v. State*, 2014 WY 158, ¶ 8, 339 P.3d 509, 512 (Wyo.2014) (citing *Mraz v. State*, 2014 WY 73, ¶ 10, 326 P.3d 931, 934–35 (Wyo. 2014)). Further, when determining whether sufficient evidence was presented to sustain a conviction of constructive possession, this Court must consider the totality of the circumstances. *Taylor v. State*, 2011 WY 18, ¶ 11, 246 P.3d 596, 600 (Wyo.2011) (citing *Urrutia v. State*, 924 P.2d 965, 967 (Wyo. 1996)).

## DISCUSSION

[¶ 11]   Wyo. Stat. Ann. § 35–7–1031(c)(iii) makes it a felony "for any person knowingly or intentionally to possess [more than three ounces of] a controlled substance [in plant form.]" Wyo. Stat. Ann. § 35–7–1031(c)(i), (iii) (LexisNexis 2013). Regan argues that the evidence was deficient with respect to the chain of custody and the identification of the substance as marijuana, and also that the State failed to prove that he "possessed" enough marijuana to support a felony conviction. We will address these issues in a different order, beginning with the claim that the State failed to prove possession of a felony quantity of marijuana beyond a reasonable doubt.

### Sufficiency of the Evidence

[¶ 12]   Wyoming recognizes two kinds of possession of a controlled substance, actual and constructive. Actual possession obviously occurs when an individual has direct physical custody over the substance. *Taylor*, ¶ 11, 246 P.3d at 599–600; *Cureton v. State*, 2007 WY 168, ¶ 16, 169 P.3d 549, 552 (Wyo.2007); *Sotolongo–Garcia v. State*, 2002 WY 185, ¶ 12, 60 P.3d 687, 689–90 (Wyo. 2002).

[¶ 13]   Two scholars have observed that "the courts have constructed a terminology purportedly designed to focus factual inquiries on factors likely to reveal whether the defendant had the ability or capacity to possess the item." Charles H. Whitebread & Ronald Stevens, *Constructive Possession in Narcotics Cases: To Have and Have Not*, 58 Va. L. Rev. 751 (1972). Stated more simply, courts have "extended the concept of possession ... to include constructive as well as actual possession." *Id.* The State does not argue that Regan's actions amounted to actual possession, at least of a felony quantity of marijuana. Rather, it asserts only that Regan constructively possessed all of the marijuana found in his car.

[¶ 14]   "The word 'possession' is often used in the criminal law without definition, which perhaps reflects only the fact that it is 'a common term used in everyday conversation that has not acquired any artful meaning.'" 1 Wayne R. LaFave, *Substantive Criminal Law*, § 6.1(e), at 432 (2d ed. 2003) (citing *Kramer v. United States*, 408 F.2d 837 (8th Cir.1969)). However, "[t]he word 'possession,' though frequently used in both

ordinary speech and at law, remains one of the most elusive and ambiguous of legal constructs.... Currently, the most controversial use of possession is the doctrine of constructive possession in narcotics cases." Whitebread & Stevens, *supra*, at 751.

[¶ 15] It is well established that in order to convict for possession of illegal drugs, the prosecution must prove beyond a reasonable doubt that the accused: (1) either individually or jointly with another exercised dominion and control over the substance; (2) had knowledge of its presence; and (3) had knowledge that the substance was a controlled substance. *Taylor*, ¶ 11, 246 P.3d at 599; *Sotolongo–Garcia*, ¶ 12, 60 P.3d at 689; *Wise v. State*, 654 P.2d 116, 119 (Wyo.1982). The parties disagree as to whether the State proved the first element beyond a reasonable doubt, and specifically whether it showed that Regan exercised the requisite dominion and control over a sufficient quantity of the marijuana to support a felony conviction.

[¶ 16] Our case law defines the terms "dominion and control" in a somewhat vague and circular manner, reciting the requirement that the accused must have the "requisite control" without offering much guidance as to the proof required to establish it. *See Seeley v. State*, 959 P.2d 170, 176 (Wyo.1998). Wyoming's Criminal Pattern Jury Instruction regarding constructive possession provides in part that "[a] person who, although is not in actual possession, knowingly has both the power and the intention, at a given time, to exercise dominion or control over a thing either directly or through another person or persons, is in constructive possession of it." Wyoming Criminal Pattern Jury Instruction 111.01A (2014) (citing Devitt and Blackmar *Federal Jury Instructions* [3] ). This Court has approved the use of this instruction in cases decided subsequent to its adoption. *Wise*, 654 P.2d at 118, 120. The pattern instruction continues to be an accurate statement of Wyoming law. We also note that the Wyoming pattern instruction was given without objection in this case.

[¶ 17] We therefore focus specifically on the requirement that the accused must have "both the power and the intention" to control the substance. Our prior holdings have only generally defined what it means to have dominion and control because the facts in those cases fell within the common meaning of the term "control." *See Wise*, 654 P.2d at 119.

[¶ 18] We have said "if a defendant is sufficiently associated with the persons having physical custody so that he is able, without difficulty to cause the drug to be produced for a customer, he can also be found by a jury to have dominion and control over the drug, and therefore, possession." *Taylor*, ¶ 13, 246 P.3d at 600. Something akin to that sort of power was what the Court of Appeals for the Tenth Circuit characterized in *United States v. King*, when it said "what matters is whether the defendant has an 'appreciable ability' (i.e. the power) to exercise dominion or control over the contraband." *United States v. King*, 632 F.3d 646, 652 (10th Cir.2011) (citing *United States v. Al–Rekabi*, 454 F.3d 1113, 1118 (10th Cir. 2006)). In *Al–Rekabi*, the court even more helpfully addressed what is meant by the "power to control" by discussing constructive possession as evincing "an appreciable ability to guide the destiny of the contraband." *Al–Rekabi*, 454 F.3d at 1118. We think this characterization accurately describes the reasoning behind the above-quoted conclusion in *Taylor*.

[¶ 19] However, this is only one element of constructive possession. Even if we assume that a jury could reasonably find beyond a reasonable doubt that Regan could have controlled the marijuana because it was in his vehicle and he could have driven away with it while Trujillo was making deliveries, the State also had to show that Regan intended to control the marijuana. Intent is frequently incorporated into the definition of constructive possession. Whitebread & Stevens, *supra*, at 759 ("[P]ossession consists of two elements: a particular physical relationship that exists among an object, the possessor, and the world at large, ... and the

---

**3.** A current citation to the latest edition of this source is 1A Kevin O'Malley et al., *Federal Jury*   *Practice and Instructions* § 16:05 (6th ed. 2008).

possessor's manifested intent to exercise such control over the object."). In fact, that definition prevails in the federal courts. 1A O'Malley, *supra*, § 16:05 (federal pattern instruction on possession); *United States v. Gonzalez*, 570 F.3d 16, 25 (1st Cir.2009) (proof of constructive possession requires evidence of both power and intent to exercise control over contraband); *United States v. Cano–Guel*, 167 F.3d 900, 904–06 (5th Cir. 1999) (approving Fifth Circuit pattern instruction requiring proof of power and intent);[4] *United States v. Reed*, 141 F.3d 644, 651 (6th Cir.1998) (constructive possession exists when defendant has power and intention to exercise control); *United States v. Garrett*, 903 F.2d 1105, 1110 (7th Cir.1990) (defining constructive possession as having power and intent to control); *United States v. Bryant*, 349 F.3d 1093, 1097 (8th Cir.2003) (approving instruction defining constructive possession as having the power and intent to exercise control); *United States v. Cain*, 130 F.3d 381, 382–83 (9th Cir.1997) (power and intent are used to define constructive possession in the circuit's model jury instructions); *United States v. Tucker*, 150 F.Supp.2d 1263, 1266–68 (D.Utah 2001) (citing 1A O'Malley, *supra*, § 16:05, with approval), *aff'd* 305 F.3d 1193 (10th Cir.2002); *United States v. Hastamorir*, 881 F.2d 1551, 1559 (11th Cir.1989) (approving instruction defining constructive possession as having both the power and intent to exercise control).

■ [¶ 20] Although it is not always clearly articulated, an element of intention is inherent in our prior decisions relating to constructive possession. *See Wise*, 654 P.2d at 119; *Taylor*, ¶¶ 11–14, 246 P.3d at 599–600. Our precedent allows an inference of constructive possession when the accused has exclusive possession over the premises where drugs are found. *Mulligan v. State*, 513 P.2d 180, 182 (Wyo.1973), *overruled on other grounds by Blakely v. State*, 542 P.2d 857, 863 (Wyo.1975); *see also King*, 632 F.3d at 651. The State seems to rely on this principle by emphasizing that Regan "actually owned and drove the car containing the marijuana" and that "he knew that the marijuana

was present in the car that he owned and was driving."

[¶ 21] However, this Court has also noted that, "if possession is not shown to be exclusive, there must be other evidence to warrant such inference." *Mulligan*, 513 P.2d at 182; *see also Rodarte v. City of Riverton*, 552 P.2d 1245, 1257 (Wyo.1976) (evidence that narcotics were discovered in a vehicle occupied by the plaintiff and others is inadequate to convict for possession); *King*, 632 F.3d at 651 ("in situations of joint occupancy, where the government seeks to prove constructive possession [of a weapon] by circumstantial evidence, it must present evidence to show some connection or nexus between the defendant and the firearm") (internal quotation marks and emphasis omitted).

[¶ 22] The facts in *Wise* illustrate the type of additional evidence needed to allow an inference of constructive possession in cases in which the accused does not have exclusive control of the place where the drugs are located. Wise contacted a female friend in Cheyenne for assistance in selling marijuana and along with a male companion traveled from Fort Collins, Colorado, to Cheyenne to meet a potential buyer. When they arrived, Wise and the female friend got out of the car and negotiated the sale of marijuana with undercover narcotics agents. He inquired about how much the agents wanted to buy, indicated how much marijuana was for sale, discussed the price (with input from the male companion), and pointed out the location of the marijuana in the back of his companion's car. *Wise*, 654 P.2d at 117. We found that these facts showed that Wise had dominion and control over the marijuana, and that he therefore constructively possessed it. *Id.* at 119.

■ [¶ 23] The evidence in this case shows that Regan and Trujillo drove from Denver to Gillette where Trujillo directed Regan to his requested stops. To show that Regan had "complete access to the marijuana," the State emphasizes that "[w]hile Trujillo was inside three different homes, Regan stayed in his car." However, that evidence does not prove that he intended to access the

4. *See* 1A O'Malley, *supra*, § 16:05, at 490.

marijuana. It only shows that Regan waited for his passenger to return, and that he did not actually do anything which might support a conclusion that he intended to control the drugs. "Mere presence in a vehicle belonging to another where contraband is discovered does not amount to possession of a controlled substance." *Rodarte*, 552 P.2d at 1257.

[¶ 24] The rule of *Rodarte* could be read narrowly to say that mere presence without knowledge that contraband is present does not amount to possession. However, it must be read more broadly in light of the principle noted above, i.e., that having knowledge that drugs are in one's presence cannot be equated with proof of the power and intent to control. The fact that Regan was in his own car therefore does not show that he had both the power and intention to exercise control over the substance.

[¶ 25] The facts of *Wise* bear a superficial similarity to this case, but they are distinguishable. The marijuana in each case admittedly belonged to the appellants' companion, and there is no evidence that either appellant ever physically touched the marijuana. In both cases, the appellants and their respective companions drove from Colorado to Wyoming, where the transactions were executed. In *Wise*, however, the State presented the following evidence of Wise's intent and power to control the marijuana: 1) he initiated the trip from Fort Collins to Cheyenne; 2) he directly enlisted the assistance of his female friend to sell the marijuana and requested she call the buyer and arrange the meeting; 3) he personally got out of the vehicle and negotiated the sale of marijuana; and 4) he directed the buyer to the marijuana on the floor of the vehicle and gave the buyer permission to examine it for quality and quantity. *Wise*, 654 P.2d at 119.

[¶ 26] These facts are substantially different from those in the instant case. Regan did not initiate the illegal activity. Trujillo directed Regan to specific locations at which he delivered the marijuana and collected money himself. Regan did not get out of the vehicle. There was no evidence indicating that Regan arranged any of the interactions, took any part in any negotiations, or made any attempt at all to associate himself with or influence the destiny of the marijuana. In fact, Officer Brothers testified that Regan told him that he refused to become involved in the transactions "because it wasn't worth the risk[.]" Regan's complete and purposeful noninvolvement in these activities does nothing to meet the State's burden to prove that he had the intent and power to exercise dominion and control over the drugs.

[¶ 27] We therefore conclude that the evidence presented was insufficient, even when viewed in the light most favorable to the State and after giving it the benefit of all favorable inferences, to support a conviction of felony possession of marijuana. We note that Regan was not charged with being an accessory before the fact (aiding and abetting) to the distribution of marijuana, or with conspiracy to distribute, which the evidence might have supported.[5]

[¶ 28] However, we must still address whether to set aside Regan's conviction completely, or whether there was sufficient evidence to support a conviction of misdemeanor possession under Wyo. Stat. Ann. § 35–7–1031(c)(i), a lesser included offense of which his counsel suggested the jury should find him guilty. If the evidence is sufficient, we must remand for resentencing on the lesser included offense. *Martinez v. State*, 2009 WY 6, ¶ 15, 199 P.3d 526, 533 (Wyo.2009) (quoting *Kelly v. State*, 2007 WY 45, ¶ 24, 153 P.3d 926, 931–32 (Wyo.2007)). To arrive at that conclusion, we must address the other two issues Appellant has raised.

### Chain of Custody

[¶ 29] Regan argues that the State failed to prove that the plant materials

---

5. The penalties for that offense would be considerably more severe than those for felony possession. Distribution-related charges carry a maximum penalty of ten years of imprisonment and/or a $10,000 fine. Wyo. Stat. Ann. § 35–7–1031(a)(ii). Being an accessory before the fact carries the same penalty as the underlying offense, as does conspiracy. Wyo. Stat. Ann. §§ 6–1–201, 304 (LexisNexis 2013). Felony possession carries a five-year maximum term of imprisonment and/or a $10,000 fine. Wyo. Stat. Ann. § 35–7–1031(c)(iii). Nonetheless, we deal with the offense charged.

tested and presented as exhibits at trial were in fact recovered from his car. Generally, "[p]roper foundation for the admission into evidence of controlled substances requires that a chain of custody be established," so as to show that the exhibit is in substantially the same condition at trial as when the crime was committed. *Rosenbaum v. State*, 915 P.2d 1200, 1202 (Wyo.1996) (citing *Ostrowski v. State*, 665 P.2d 471, 490 (Wyo.1983); *Robinson v. State*, 716 P.2d 364, 369 (Wyo.1986)).

[¶ 30] The State argues that Regan stipulated to the chain of custody in pretrial documents.[6] It is true that "[w]hen the attorneys on both sides stipulate or agree as to the existence of a fact, [the jury] may accept the stipulation as evidence and regard that fact as proved." *Old Chief v. United States*, 519 U.S. 172, 200, 117 S.Ct. 644, 659, 136 L.Ed.2d 574 (1997) (O'Connor, J., dissenting, with whom Scalia, C.J., and Thomas, J., join) (quoting 1 E. Devitt et al., *Federal Jury Practice and Instructions* § 12.03, at 333 (4th ed. 1992)). *See also Rosenbaum*, 915 P.2d at 1203.

[¶ 31] The stipulation in the pretrial documents was never presented to the jury as a stipulation must be. However, that makes no difference in this case, because the parties stipulated to the admission of the putative marijuana seized, and it was received in evidence. It could not have been properly admitted if it was not the same substance taken from Regan's vehicle. After it was received, the State still had to prove beyond a reasonable doubt that it was in fact marijuana, the controlled substance Regan was charged with possessing. Although the stipulation and evidence does not specifically identify the approximately quarter-ounce Regan admitted possessing to Detective Brothers, one of two or three stipulated exhibits could have been it.

## Identification of Marijuana

[¶ 32] Regan next argues that the State failed to prove that the substance found in his car was marijuana by highlighting an excerpt of the testimony by the State's expert chemist. Considering the totality of the circumstances, the evidence was sufficient to support the jury's conclusion that the substance tested and presented at trial was in fact marijuana.

[¶ 33] Although the chemist responded to the State's inquiry about whether his testing identified the plant material as marijuana with "I'm not a botanist, I'm a chemist, I identified THC," he also testified that THC was the active component in marijuana and that one could conclude from the positive THC test that the material was marijuana. Furthermore, other evidence supported this conclusion.

[¶ 34] Experienced Officers Cyr and Vos testified to smelling the odor of raw marijuana when they approached the vehicle. Officer Vos, with extensive training and experience in the investigation and detection of narcotics, testified to visually recognizing the substance as marijuana.

[¶ 35] In addition, both Regan and Trujillo admitted to using marijuana and referred to the illicit material found in the car as such. Regan admitted to the police that he had a quarter-ounce of marijuana and knew that Trujillo had loaded marijuana into the car. He revealed to officers that Trujillo owned the marijuana, that they both had smoked it in the car, and that Trujillo had delivered specified quantities of marijuana to various locations in Gillette. Trujillo testified that over a pound of the marijuana in the car belonged to him. These consistent references to the substance as marijuana by persons accustomed to partaking of the drug clearly allowed the jury to reasonably infer that the substance was marijuana.

[¶ 36] We hold that the evidence, taken as a whole in the light most favorable to the State, was sufficient for a jury to reasonably conclude that the substance discovered in Regan's car was in fact marijuana, including the quarter ounce the State did prove he possessed.

---

6. Regan's counsel noted in his "Defendant's Response to Case Management Order": "The State has requested that the Defense Stipulate to the Chain of Custody. The Defense has discussed the matter with the State and would so stipulate, but not stipulate to the results of the testing of the marijuana without testimony by the State crime lab."

## CONCLUSION

[¶ 37] We find the evidence insufficient as a matter of law to support a conviction of constructive felony possession, and we reverse that conviction. However, the parties' stipulation to admissibility of the putative marijuana was sufficient for a jury to conclude that the putative marijuana presented at trial was the same as that found in Regan's vehicle. Finally, the evidence as a whole was sufficient to uphold the jury's conclusion that the substance found in Regan's car was in fact marijuana. The evidence was therefore sufficient to support a conviction of the lesser included offense of actual misdemeanor possession, since Regan admitted to possessing a quarter-ounce of the marijuana found in the vehicle.

[¶ 38] We reverse Regan's conviction of felony possession, reduce it to misdemeanor possession of marijuana under Wyo. Stat. Ann. § 35–7–1031(c)(i), and remand to the district court for resentencing.