# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 65

APRIL TERM, A.D. 2016

*June 29, 2016*

DOUGLAS CRAIG LEMLEY,

Appellant
(Defendant),

v.                                                    S-15-0225

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Fremont County*
*The Honorable Marvin L. Tyler, Judge*

*Representing Appellant:*
> Office of the State Public Defender: Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel. Argument by Ms. Olson.

*Representing Appellee:*
> Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Christyne Martens, Senior Assistant Attorney General; Benjamin M. Burningham, Assistant Attorney General. Argument by Mr. Burningham.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

*DAVIS, J., delivers the opinion of the Court; FOX, J., files a dissenting opinion, in which BURKE, C.J., joins.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, **Justice**.

[¶1]    Appellant Douglas Lemley was convicted of possessing relatively small amounts of morphine and methamphetamine. Both offenses were felonies due to Lemley's prior controlled substance convictions.[1] We affirm.

**ISSUES**

[¶2]    Lemley asks this Court to consider the following three questions:

> 1.  Was defense counsel ineffective in failing to move for the suppression of evidence found during the warrantless search of Lemley's backpack?
>
> 2.  Was the State's evidence sufficient to prove that Lemley constructively possessed the drugs found in his backpack?
>
> 3.  Did the district court's failure to grant Lemley's request for an additional instruction on the topic of constructive possession amount to reversible error?

**FACTS**

[¶3]    At approximately 8:30 a.m. on September 4, 2014, Wyoming Highway Patrol Trooper Daniel Wyrick was driving eastbound toward Shoshoni on Highway 789, when a westbound SUV owned and driven by Michael Keele crossed the centerline into the trooper's lane, nearly causing a head-on collision. It later turned out that Lemley was a passenger in the vehicle.

[¶4]    Wyrick turned his cruiser around and pulled Keele's vehicle over. He approached the driver's window, asked for Keele's license and insurance, and asked if he had been drinking or texting at the time he swerved out of his lane. Keele denied drinking and handed the trooper his proof of insurance and a temporary identification card he had been issued pending replacement of his lost driver's license. Wyrick confirmed that Keele had a valid license, and had him exit his vehicle to perform field sobriety tests. He showed no signs of intoxication, so Trooper Wyrick had him return to the SUV while he prepared a citation. In the meantime, the trooper radioed for assistance, and Fremont County Deputy Sheriff Kevin Coulter and Chief of Police Bartlett from Shoshoni came to the scene.

---

[1] Under Wyo. Stat. Ann. § 35-7-1031(c)(i) (LexisNexis 2015), a third conviction for possession of any amount of controlled substance is a felony punishable by up to five years in prison and a $5,000 fine.

1

[¶5]    When Deputy Coulter arrived, the trooper handed him Keele's identification papers.  The deputy then approached the passenger side of the SUV, introduced himself to Lemley, and asked to see some identification.  Lemley produced his driver's license, and the deputy had his dispatcher run a warrant check on both him and Keele.  When he returned to the vehicle, he asked for and was granted permission by Keele to search it.  When he asked for permission to search from the driver's side window, Keele was in the driver's seat and Lemley was seated next to him in the front passenger's seat.

[¶6]    Because he intended to employ his drug dog for the search and wanted to avoid any risky interactions between the dog and the two men, Deputy Coulter asked them to step out of the vehicle, directed Keele to take a seat in Trooper Wyrick's cruiser, and sent Lemley to Chief Bartlett's car.[2]  High winds made it impossible to effectively use the dog outside the vehicle, and the deputy decided the animal might be injured if allowed to move around inside because it was filled with clothes, debris, food, and "garage" items.  The seats and floor were covered with these items, and the cargo area of the SUV was similarly loaded from half to three quarters of the way to the headliner.  Consequently, Deputy Coulter returned the dog to his patrol vehicle and searched Keele's SUV by hand.

[¶7]    The deputy began his search with the driver's seat and the floor and area near it.  Finding nothing of interest there, he turned his attention to the area around the front passenger seat and again found nothing significant.  He proceeded next to that portion of the rear seat and floor immediately behind the front passenger seat, where he found a large plastic tote bag that filled approximately that half of the rear bench seat.  It contained a lot of clothing and sundry household items.  Next, the deputy examined the rear driver-side seat and floor.  On the seat was a blue and black backpack.

[¶8]    Coulter first unzipped the middle compartment of the pack and found men's clothes, toiletries, and a wallet.[3]  In the fully zipped front compartment, he found a small, zippered leather pouch containing small plastic baggies, one containing four purplish pink pills and the other what initially appeared to be a gnawed-upon white pill.  The officers on the scene were able to quickly identify the pink pills as morphine sulphate from markings pressed into them by conducting an internet search on a smartphone.

[¶9]    Deputy Coulter separately asked first Keele[4] and then Lemley who owned the backpack.[5]  Keele said it belonged to Lemley, who had brought it with him when he got

---

[2] The Trooper testified that it may have been at this time, rather than earlier, that he ran field sobriety tests on Keele.

[3] The record reflects that Deputy Coulter eventually discovered several cards in the wallet, including a social security card and a credit card issued to Lemley.  However, no testimony indicates that the deputy examined the wallet's contents prior to inventorying and photographing them at the sheriff's department following Lemley's arrest at the scene of the traffic stop.

[4] The fact that the deputy asked Keele about ownership of the pack supports the notion that he had not yet opened the wallet and found documents which could have identified it as Lemley's.

in the SUV.  Lemley confirmed that the pack was his.  When confronted with the leather pouch and its contents, however, Lemley denied it was his.[6]

[¶10]  The deputy arrested Lemley for possession of the suspected morphine.  Later laboratory testing established that the pills were indeed morphine, and also that what appeared to be a gnawed-on pill was in fact part of a cotton ball containing methamphetamine.

[¶11]  Lemley eventually went to trial on charges of possessing both substances.  On March 4, 2015, the jury returned a guilty verdict on both counts, and the district court later sentenced him to concurrent sentences of two to five years in prison.  Lemley then timely perfected this appeal.

## DISCUSSION

**Ineffective Assistance**

[¶12]  Lemley contends that his trial attorney was ineffective in not moving to suppress the drugs found in his backpack.  More pointedly, he asserts that Trooper Wyrick and Deputy Coulter could not reasonably rely on Keele's apparent authority to consent to a search through the interior and contents of Keele's SUV to justify a search of Lemley's pack.  He concludes that the search of the pack was unlawful under the Fourth Amendment to the United States Constitution because Lemley did not consent to it, and that the evidence would have been suppressed if the proper motion had been made.

[¶13]  This Court reviews ineffective assistance claims *de novo*.  *Mersereau v. State*, 2012 WY 125, ¶ 68, 286 P.3d 97, 122 (Wyo. 2012).  To succeed on such a claim, an appellant must demonstrate that counsel's acts or omissions were outside the wide range of professionally competent assistance.  We strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment.  If an appellant can clear this high barrier of ineffectiveness, he must also establish that he was thereby prejudiced because if his counsel had performed competently, there is a reasonable probability his trial would have yielded a decision

---

[5] It was apparently at this point that Keele first explained the disarray in his vehicle.  He indicated his female companion had thrown him out of their shared house, and he had since been living in the vehicle with everything he owned.

[6] Lemley theorized at trial that Keele or Sara Lujan had an opportunity to place the pouch in his backpack.  According to Keele's testimony, Lemley had been staying with Lujan in Casper for a few days while looking for work.  He then called Keele and asked him to drive to Casper and take him home to Riverton.  Before the return trip, Lujan climbed into the back seat of Keele's SUV, directly behind Lemley, and Keele dropped her off at an undisclosed location in Casper.  There is no testimony that any of the officers were ever apprised of these facts during the stop.  Thus, they had no reason to believe that Keele and Lemley, Riverton residents, were not simply traveling between Shoshoni and Riverton, especially given his statement that he was living out of his vehicle.  They likewise had no reason to suspect that Lemley would have brought along any sort of luggage on that drive.

3

more favorable to him. *Grissom v. State*, 2005 WY 132, ¶¶ 11-12, 121 P.3d 127, 132 (Wyo. 2005). This Court may dispose of an ineffectiveness claim solely on the basis that the appellant has not made an adequate showing of prejudice. *Id.*, ¶ 13, 121 P.3d at 133.

[¶14] Where a claim of ineffectiveness rests on counsel's failure to file a suppression motion, prejudice can be shown only by demonstrating that the motion would have been granted, thereby leaving the prosecution with little unsuppressed evidence to support a conviction. *Id.*, ¶ 12, 121 P.3d at 132-33. Stated another way, if the motion would have been denied, a defendant cannot have been prejudiced by counsel's failure to bring the motion. *Mersereau*, ¶ 69, 286 P.3d at 122; *Carter v. State*, 2010 WY 136, ¶ 15, 241 P.3d 476, 484 (Wyo. 2010).[7]

[¶15] It has been well established since *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), that no Fourth Amendment violation occurs when police reasonably believe that a person who consents to a warrantless search has authority over the place or thing to be searched. 4 Wayne R. LaFave, *Search and Seizure* § 8.3(g) (5th ed. database updated Oct. 2015). Apparent authority does not exist when the police clearly know that the consenting party has no such authority. *Id.*

[¶16] However, there is apparent authority to give a valid consent if the facts available to an officer at the time of the search permit an objectively reasonable, even if perhaps erroneous, belief that the consenting party has sufficient interest in or power over the thing to be searched to grant such consent. *United States v. Benoit*, 713 F.3d 1, 8 (10th Cir. 2013); *Smallfoot v. State*, 2012 WY 39, ¶ 14, 272 P.3d 314, 318 (Wyo. 2012); *Baker v. State*, 2010 WY 6, ¶ 12, 223 P.3d 542, 547-48 (Wyo. 2010).

[¶17] Although it has been said that officers presented with ambiguous facts may have a duty to investigate further before relying on a person's consent, facts reasonably indicating the person has the authority to consent do not become ambiguous, or give rise to a duty of further inquiry, simply because one can imagine additional facts that might alter one's analysis. *United States v. Romero*, 749 F.3d 900, 907 (10th Cir. 2014). Moreover, there is no duty to inquire further, and an officer acts reasonably in relying on the apparent authority of the consenting person, if a second person who could be expected to object and correct any misperception as to authority to authorize a search is present when consent is requested and he remains silent. 4 LaFave, *supra*, § 8.3(g); William E. Ringel, *Searches and Seizures, Arrests and Confessions* § 9:22 (2d ed. March 2016 update).

---

[7] We are mindful that the State would have had the burden of proving the reasonableness of this warrantless search had a motion to suppress been filed. *Owens v. State*, 2012 WY 14, ¶ 10, 269 P.3d 1093, 1096 (Wyo. 2012) (citing *Morris v. State*, 908 P.2d 931, 935 (Wyo. 1995)). Because there was no motion to suppress, we must glean the facts which would or would not have allowed the State to meet its burden from the trial transcript. Fortunately, although the evidence was not focused on this issue, it is clear enough to allow us to make that determination.

[¶18]  This point is illustrated by *United States v. Langston*, 970 F.2d 692 (10th Cir. 1992).  In the presence of the passenger, the driver of a vehicle consented to a search of the trunk and plastic garbage bags found in the trunk, while the passenger remained silent.  The Court of Appeals held that, due to that silence in light of the facts known to the officers at the moment of the search, they could reasonably believe that the driver possessed sufficient authority over the area and items to be searched that his consent was valid under the Fourth Amendment.  *Id.* at 697-98; *see also United States v. Hunter*, 663 F.3d 1136, 1144 (10th Cir.  2011), later addressed by 527 F.App'x 796, 798-99 (10th Cir. 2013).

[¶19]  As already noted, the reasonableness of an officer's beliefs and actions turns on what facts are available to him at the time of the challenged search.  For instance, if two young men with New York identification, in a vehicle with New York plates, were stopped west of Shoshoni with several pieces of conventional luggage in the trunk, the most natural and reasonable conclusion would likely be that some of the luggage belonged to one and some belonged to the other.  That situation, however, is not what the officers encountered in the present case.

[¶20]  In this case, at 8:30 a.m. on a Thursday morning, and at a spot between Riverton and Shoshoni, the officers encountered two locals from Riverton.  It does not appear from the record that the officers had any reason to believe that the men were travelling from Casper, or that they otherwise had any need to be carrying luggage of any sort.  They learned that Keele owned the vehicle, and could naturally and reasonably conclude that he was responsible for filling it with what appeared to be a somewhat random scattering of clothes, debris, food, and "garage" items.  The seats and floor were covered with such belongings, and the cargo area of the SUV was similarly loaded from half to three-quarters of the way to the headliner.  Deputy Coulter viewed the SUV's interior as literally unfit and unsafe for his canine partner.  Keele offered a very plausible explanation for the state of the vehicle's interior – he was living in the SUV.[8]

[¶21]  As for the containers searched, the backpack was found on the seat behind Keele, and a large plastic tote bag covered the half of the bench seat behind Lemley.  If the officers had any reason to believe that the men needed to carry luggage in the back seat, it would have been natural and reasonable to conclude that before each entered the front seat that he intended to occupy, he would probably open the rear door on that side of the

---

[8] The dissent would hold that discovery of the wallet in the backpack should have required the deputy to open it, which in this case would have revealed articles belonging to Lemley.  This conclusion does not adequately reflect the fact that the officer was searching a vehicle filled with debris which included a number of personal items, and that each of the vehicle's occupants had produced identification, which suggests an equally plausible conclusion that the wallet was just one more personal effect Keele was not using.  Finally, it relies on hindsight, something the deputy did not have.

vehicle and deposit his luggage behind that seat, and that the backpack was likely to be Keele's.[9]

[¶22] Finally, and perhaps most importantly, both men were seated in the vehicle when officers asked for and received Keele's permission to search the vehicle. Although Lemley would have heard the request and consent, he remained silent and gave the officers no sign that he had any interest in the backpack. Given these circumstances and the authority cited above, we conclude that the officers could reasonably rely on Keele's apparent authority to consent to a search of the interior and contents of the SUV.

[¶23] Consequently, the search of the backpack was constitutionally valid, the proposed suppression motion would properly have been denied, and counsel's failure to pursue such a motion did not constitute ineffective assistance or prejudice Lemley.

**Sufficiency of the Evidence**

[¶24] Lemley argues that the evidence against him was insufficient to prove that he constructively possessed the morphine and methamphetamine because there was no direct evidence that he knew the black pouch containing the drugs was in his pack. We must decide whether the jury could reasonably have concluded that the disputed elements were proven beyond a reasonable doubt. In addressing that question, this Court does not substitute its judgment for that of the jury, and it accepts as true the State's evidence supporting the verdict, and gives it the benefit of all reasonable inferences which can be drawn from it. *Regan v. State*, 2015 WY 62, ¶ 10, 350 P.3d 702, 705 (Wyo. 2015). We do not consider conflicting evidence. *Id.*; *Butcher v. State*, 2005 WY 146, ¶ 16, 123 P.3d 543, 549 (Wyo. 2005), *overruled on other grounds by Wilkerson v. State*, 2014 WY 136, 336 P.3d 1188 (Wyo. 2014).

[¶25] Lemley correctly notes that in order to convict him for constructively possessing a controlled substance, the State had to prove that he had dominion and control over the substance, knew it was present, and knew it was a controlled substance. *Regan*, ¶ 15, 350 P.3d at 706. Dominion and control consists of having an appreciable ability to guide a thing's destiny and the intent to do so. *Id.*, ¶¶ 17-18, 350 P.3d at 706. A reasonable inference that a defendant possessed the requisite knowledge and control—and one that is sufficient to support a conviction—may be drawn entirely from circumstantial evidence. *Taylor v. State*, 2011 WY 18, ¶ 11, 246 P.3d 596, 599-600 (Wyo. 2011). Furthermore, a defendant's access to an area holding drugs which were hidden among the defendant's belongings may suffice to establish that he controlled them and knew of their presence and nature. *Id.*, ¶¶ 13-14, 246 P.3d at 600.

---

[9] As noted above, no testimony indicated that the officers knew at this time that Ms. Lujan had briefly travelled with the two men.

[¶26] Both Keele and Lemley testified the backpack belonged to Lemley, and Keele testified that Lemley was carrying it and placed it in the SUV. It is therefore evident that Lemley intentionally asserted power over the pack. Officers found it fully zipped shut, and sometime well before the encounter with them, he had apparently placed his wallet in the pack after removing his driver's license. An observer's ability to immediately identify the drugs in the pack had been limited by placing them in the black leather pouch and placing the pouch among Lemley's other possessions.

[¶27] Furthermore, Keele testified that he never touched the pack. Its location in the vehicle would have made it difficult for him to put anything in it while driving without alerting Lemley, even if he was sleeping.

[¶28] We believe that a rational jury confronted with these circumstances could reasonably reject Lemley's disavowal of any knowledge of drugs, and that it could reasonably conclude that he knew the pack contained morphine and methamphetamine because, like his wallet, he intentionally placed them where they were found. These were natural inferences the jury could draw from the evidence, and Lemley's suggestions to the contrary rested entirely on speculation. Accordingly, we find the evidence sufficient to support his convictions.

**The Additional Instruction**

[¶29] This Court reviews challenges to jury instructions under the abuse of discretion standard. District courts have broad discretion to tailor instructions to the facts of a particular case, and we will not disturb their decisions so long as the instructions given, viewed as a whole, fairly and adequately state the law and cover the relevant issues. *Adekale v. State*, 2015 WY 30, ¶ 37, 344 P.3d 761, 770 (Wyo. 2015). To obtain a reversal, an appellant must demonstrate that the instructions given confused or misled the jury regarding the proper principles of law. *Janpol v. State*, 2008 WY 21, ¶ 7, 178 P.3d 396, 399 (Wyo. 2008).

[¶30] Lemley contends the district court abused its discretion in failing to give the following proffered instruction:

> To convict for constructive possession of illicit drugs, the prosecution must establish that the Defendant: (1) either individually or jointly with another exercised dominion and control over the substance; (2) had knowledge of its presence; and (3) had knowledge that the substance was a controlled substance.

7

As we indicated above in our discussion of Lemley's sufficiency of the evidence question, this instruction correctly states the law. That is not to say, however, that the district court needed to give it in this case.

[¶31] The proposed instruction does little more than state the commonsense principle that to knowingly possess a controlled substance, you must know you have it and what it is. It was unnecessary because the instructions given by the district court correctly and clearly explained the law to the jury. First, Instruction Nos. 12 and 13, the elements instructions for both charged offenses, informed the jury that the prosecution had to prove beyond a reasonable doubt that Lemley "Knowingly or Intentionally possessed" the designated controlled substance. Instruction No. 17, taken from Wyoming Criminal Pattern Jury Instruction 111.01A (2014) (defining the term possession), informed the jury, "A person who, although [he] is not in actual possession, knowingly has both the power and the intention, at a given time, to exercise dominion or control over a thing either directly or through another person or persons, is in constructive possession of it." This Court has found this instruction to be an accurate statement of Wyoming law in previous cases. *Regan*, ¶ 16, 350 P.3d at 706.

[¶32] From the instructions given, the jury learned that the prosecutor had to prove Lemley had the power to control a prohibited substance and intended to do so, which could only be the case if he knew that a controlled substance was in a place where he could act upon it. Lemley's proposed instruction would have added little, if anything, to the instructions given. Consequently, we conclude that the district court reasonably rejected it, and that it did not abuse its discretion.

## CONCLUSION

[¶33] The testimony in this case reveals nothing unreasonable about the officers' reliance on Keele's apparent authority to consent to the search of his SUV's contents. We therefore cannot say Lemley's counsel was ineffective for failing to move to suppress the fruits of that search. The State's evidence was sufficient to support Lemley's convictions, and the district court properly rejected his proposed additional instruction on constructive possession. We therefore affirm the Judgment and Sentence.

**FOX, Justice**, dissenting, in which **BURKE, Chief Justice**, joins.

[¶34]   I respectfully dissent.  The majority concludes Mr. Lemley was not prejudiced by trial counsel's failure to file a motion to suppress evidence found during the search of Mr. Lemley's backpack because the search was lawful under the doctrine of apparent authority.  According to the majority, the investigating officer reasonably determined that Mr. Keele had apparent authority to consent to a search of Mr. Lemley's backpack.  I disagree.  The majority reaches its conclusion despite the fact that the record shows the officer (1) did not know who the backpack belonged to before searching the pack, and (2) did not investigate the contents of the wallet found in the backpack before continuing to search additional compartments.

[¶35]   We must determine the outcome of a motion to suppress through the correct lens. Both the Fourth Amendment to the United States Constitution and Article 1, § 4 of the Wyoming Constitution prohibit warrantless searches.  "We have stated that under both constitutions, warrantless searches and seizures are per se unreasonable unless they are justified by probable cause and established exceptions." *Holman v. State*, 2008 WY 54, ¶ 10, 183 P.3d 368, 371 (Wyo. 2008) (quoting *Pena v. State*, 2004 WY 115, ¶ 29, 98 P.3d 857, 870 (Wyo. 2004)).  One established exception is search pursuant to valid consent. *Johnson v. State*, 2010 WY 47, ¶ 7, 228 P.3d 1306, 1310 (Wyo. 2010).  As the majority states, an officer may proceed to search if the officer reasonably believes that the person consenting has authority to grant the consent.  Because consent acts as a waiver of a constitutional right, it is an exception to the search warrant requirement that must be "jealously and carefully drawn."  *State v. Daniels*, 848 N.W.2d 670, 673 (N.D. 2014) (quoting 68 Am. Jur. 2d *Searches and Seizures* § 114 (updated 2016)).

[¶36]   With these rules of law in mind, we turn to the particular facts of this case.  The officers knew that there were two people in the vehicle, they had no probable cause to search it, and there were no exigent circumstances.  Mr. Keele consented to the search of the vehicle; Mr. Lemley did not.  When Deputy Coulter first unzipped Mr. Lemley's pack, he found a wallet which later turned out to contain papers identifying it as Mr. Lemley's.  After the search, Deputy Coulter asked Mr. Keele and then Mr. Lemley who owned the backpack.  "[W]here an officer is presented with ambiguous facts related to authority, he or she has a duty to investigate further before relying on the consent." *United States v. Cos*, 498 F.3d 1115, 1128 (10th Cir. 2007) (quoting *United States v. Kimoana*, 383 F.3d 1215, 1222 (10th Cir. 2004)).  Here, Deputy Coulter was clearly presented with ambiguous facts, or he would not have felt it necessary to ask the driver and Mr. Lemley who owned the backpack.  These facts are similar to those in *United States v. Munoz*, 590 F.3d 916 (8th Cir. 2010), where the court held:

> Trooper Jackson also did not reasonably believe that Smith had authority to consent to the search of the backpack, as there were two people in the car who each had been sitting in

the passenger seat during the trip. In fact, Trooper Jackson testified that, at the time of opening the backpack, he did not know whose it was. Because Munoz did not consent to the search of his backpack, his Fourth Amendment rights were violated by the search.

*Id.* at 923; *see also People v. James*, 645 N.E.2d 195, 202-204 (Ill. 1994).

[¶37] The majority relies on *United States v. Langston*, 970 F.2d 692 (10th Cir. 1992), to conclude that the officers reasonably relied on the driver's apparent authority to consent to search Mr. Lemley's backpack when he remained silent while the driver consented to search. However, in *Langston* the incriminating evidence was found in a bag in the car's trunk. That bag contained no easily-accessible identifying document, and the driver was asked for, and gave, specific consent to search the bag. *Id.* at 697. Here, Deputy Coulter had in his hand a wallet which, predictably, contained documents identifying the backpack's owner. Given there were two people in the vehicle, and given that Deputy Coulter was not certain who owned the backpack, it would have been a very simple matter, taking only seconds, to ascertain the owner of the pack and determine whether consent to search it had been given by a person with authority to do so. "In situations where a constitutional protection applies and consent alone serves as the basis for conducting a search, the onus is on the officer to ensure that he has received valid consent; it is not on the individual to make sure her rights are upheld." *Daniels*, 848 N.W.2d at 677. Furthermore, we have said that "[a]cquiescence and nonresistance have not been deemed sufficient under Wyoming law to establish consent." *Seymour v. State*, 2008 WY 61, ¶ 19, 185 P.3d 671, 677 (Wyo. 2008) (quoting *O'Boyle v. State*, 2005 WY 83, ¶ 38, 117 P.3d 401, 412 (Wyo. 2005)).

[¶38] For these reasons, I would find counsel was deficient when he failed to file a motion to suppress, and Mr. Lemley was prejudiced by that failure. I would reverse.

10